STATE OF NORTH CAROLINA
v.
ELDER G. CORTEZ, Defendant, and INTERNATIONAL FIDELITY INSURANCE
COMPANY, Surety, and RICHARD L. LOWRY, Surety, and LARRY D. ATKINSON,
Surety, and TONY L. BARNES, Surety

INTERNATIONAL FIDELITY INSURANCE COMPANY, Plaintiff
v.
ELDER GIOVANI CORTEZ; JOHNSTON COUNTY BOARD OF EDUCATION; STATE
OF NORTH CAROLINA; and WILL R. CROCKER in his Official Capacity as the
Clerk of Superior Court for Johnston County, Defendants

No. COA12 1399

———————————

TONY L. BARNES; LARRY D. ATKINSON; RICHARD L. LOWRY; and LR&M LR&M
BAILBONDS, INC., Plaintiffs
v.
ELDER GIOVANI CORTEZ; STATE OF NORTH CAROLINA; JOHNSTON COUNTY
BOARD OF EDUCATION; WILL R. CROCKER in his Official Capacity
as the Clerk of Superior Court for Johnston County; and STEVE BIZZELL
in his Official Capacity as Sheriff of Johnston County, Defendants

No. COA12 1427

Filed 20 August 2013

1. **Sureties—appearance bond—name on bond form**

    International Fidelity Insurance Company (International) was
the surety on an appearance bond for a defendant who did not
appear even though International's name did not appear on the
first page of the appearance bond form. International's subsequent
actions, admissions, and seemingly uninterrupted participation in
the litigation was inconsistent with its position disclaiming its intent
to be bound by the contract entered into by its agent.

2. **Sureties—bail bond—forfeiture—relief from final judgment**

    The trial court did not err in an action concerning forfeiture
of a bail bond by concluding that International Fidelity Insurance

Company's (International's) exclusive remedy for relief from a final judgment of forfeiture was to appeal from that judgment pursuant to N.C.G.S. § 15A-544.8. After defendant failed to appear, International received timely and proper notice of the entry of forfeiture; although an order was entered that set aside the forfeiture, that order was subsequently rendered a nullity and vacated, and the forfeiture was made a final judgment.

**3. Judgments—collateral attack—bail bond forfeiture**

The trial court did not err in an action concerning a bail bond forfeiture when it concluded that a complaint by International Fidelity Insurance Company was a collateral attack on a judgment decreeing forfeitures to be final judgments.

**4. Appeal and Error—unnecessary issue—determination on another question**

The question of whether certain complaints in an action concerning a bail bond forfeiture were barred by collateral estoppel and *res judicata* was rendered unnecessary by the trial court's determination that the complaints were impermissible collateral attacks.

**5. Sureties—bond forfeiture—sanctions—motion timely**

In light of the procedural complexities and anomalies of a bail bond forfeiture case, a school board's motion for sanctions against the bondsmen and the insurance company was timely. The plain language of N.C.G.S. § 15A-544.5(d) provides no express instruction as to when a party must move for sanctions against a surety in order to be timely.

**6. Bail and Pretrial Release—bond forfeiture—sanctions—no abuse of discretion**

The trial court did not abuse its discretion by imposing monetary sanctions on an insurance company (International) in an action concerning the forfeiture of a bail bond. International did not attach the documentation required to support its motion seeking to set aside the forfeiture and such a failure is one of the grounds upon which the court is authorized to impose sanctions under N.C.G.S. § 15A-544.5(d)(8).

**7. Appeal and Error—preservation of issues—constitutional issues not raised at trial—not considered**

Constitutional issues not raised in the record on appeal, not presented to the trial court, and not ruled on by the trial court were not considered.

STATE v. CORTEZ

[229 N.C. App. 247 (2013)]

**8. Sureties—bond forfeiture—sanctions—amount**

The trial court did not err in the amount of sanctions imposed against the insurance company in an action concerning a bail bond forfeiture where the statute in effect at the time the insurance company filed its motion for remission did not provide any applicable guidance or factors for determining the amount of sanctions and the statute was amended one week later to provide such guidance. The trial court's conclusion that the version of the statute in effect when the motion was filed governed was not challenged on appeal, and, in light of the record, the trial court's sanction cannot be said to have been manifestly unsupported by reason.

**9. Appeal and Error—preservations of issues—issues not addressed**

Issues in the appeal concerning a bail bond forfeiture were not addressed where they were not determinative in light of other issues, were not supported by relevant legal authority, were not challenged at trial, or were meritless in light of plain statutory language.

Appeal by Richard L. Lowry and L R & M Bailbonds, Inc.[1] from order entered 11 April 2012 by Judge William R. Pittman in Johnston County Superior Court. Appeal by International Fidelity Insurance Company from order entered 11 April 2012[2] by Judge William R. Pittman in Johnston County Superior Court, and from order entered 24 August 2012 by Judge Richard L. Doughton in Johnston County Superior Court. Heard in the Court of Appeals 4 June 2013.

*Narron, O'Hale and Whittington, P.A., by John P. O'Hale, for plaintiffs–appellants Richard L. Lowry and L R & M Bailbonds, Inc.*

*Ragsdale Liggett PLLC, by Mary Hulett, Amie C. Sivon, and John B. Walker, for appellant International Fidelity Insurance Company.*

*Roy Cooper, Attorney General, by Grady L. Balentine, Jr., Special Deputy Attorney General, for defendants–appellees the State of North Carolina and Will R. Crocker in his Official Capacity as the Clerk of Superior Court for Johnston County.*

1. Although the record indicates that L R & M Bailbonds, Inc. is a named party in File No. 12 CVS 30, the appellation representing this party in our caption matches that of the trial court's 11 April 2012 order, which identifies this party as "LR&M LR&M Bailbonds, Inc."

2. Although the record indicates that Steve Bizzell, in his Official Capacity as the Sheriff of Johnston County, is a named party in File No. 12 CVS 201, our caption matches that of the trial court's 11 April 2012 order, which does not include this party.

*Tharrington Smith, L.L.P., by Rod Malone, and Daughtry, Woodard, Lawrence, & Starling, by James R. Lawrence, Jr., for defendant–appellee Johnston County Board of Education.*

MARTIN, Chief Judge.

Because these cases involve common issues, they have been joined for the purposes of appeal pursuant to our authority under Rule 40 of the North Carolina Rules of Appellate Procedure. *See* N.C.R. App. P. 40 ("Two or more actions that involve common issues of law may be consolidated for hearing upon motion of a party to any of the actions made to the appellate court wherein all are docketed, or upon the initiative of that court.").

As a preliminary matter, we note that this Court has considered issues arising out of the proceedings for File No. 07 CRS 56935 in two prior appeals. *See State v. Cortez (Cortez II),* __ N.C. App. __, 715 S.E.2d 881 (2011); *State v. Cortez (Cortez I),* 211 N.C. App. 198, 711 S.E.2d 876 (unpublished), *supersedeas, disc. review, and cert. denied,* 365 N.C. 336, 731 S.E.2d 834 (2011), *cert. denied,* __ U.S. __, 182 L. Ed. 2d 165 (2012). In order to fully address the issues properly before us, we recount the relevant procedural history for the proceedings that both preceded and followed *Cortez I* and *Cortez II.*

Twenty-nine-year-old Elder Giovani Cortez[3] ("defendant") was arrested and indicted for the offenses of first-degree kidnapping, first-degree rape of a child under the age of thirteen, and taking indecent liberties with a child, which offenses were alleged to have occurred on 23 August 2007. Defendant was authorized to be released upon the execution of a secured bond in the amount of $2,000,000.00, which was later reduced to $600,000.00. On 16 September 2008, four months after defendant's secured bond was reduced, defendant was released on bail subject to the conditions of appearance bonds executed by Tony L. Barnes, Larry D. Atkinson, and Richard L. Lowry in the amounts of $20,000.00, $10,000.00, and $570,000.00, respectively.

Mr. Barnes executed the $20,000.00 bond as an "accommodation bondsman," and Mr. Atkinson executed the $10,000.00 bond as a "professional bondsman," which rendered each a surety on their respective

---

3. Defendant's middle name appears in the record as "Geovani," "Deovani," and "Giovani." Because the captions of the court's orders for File Nos. 12 CVS 30 and 12 CVS 201, from which the parties appeal, indicate that defendant's middle name is "Giovani," we use the same appellation here.

bonds. *See* N.C. Gen. Stat. § 15A-531(8)(b)–(c) (2011) (defining "[s]urety" as "[t]he professional [or accommodation] bondsman, when a bail bond is executed by a professional [or accommodation] bondsman"). Because Mr. Lowry executed the $570,000.00 bond as a "bail agent," the surety for that bond was the insurance company on behalf of which Mr. Lowry executed the bond. *See* N.C. Gen. Stat. § 15A-531(8)(a) (defining "[s]urety" as "[t]he insurance company, when a bail bond is executed by a bail agent on behalf of an insurance company"); *see also* N.C. Gen. Stat. § 15A-531(3) (defining "[b]ail agent" as a person licensed "as a surety bondsman under Article 71 of Chapter 58 of the General Statutes, [and] is appointed by an insurance company by power of attorney to execute or countersign bail bonds for the insurance company in connection with judicial proceedings"); N.C. Gen. Stat. § 58-71-1(11) (2011) (defining "[s]urety bondsman" as a person licensed by the North Carolina Commissioner of Insurance who "is appointed by an insurer by power of attorney to execute or countersign bail bonds for the insurer in connection with judicial proceedings"). The record shows that, at the time the bond was executed, Mr. Lowry was authorized to execute bail bonds both for International Fidelity Insurance Company ("International") and for Accredited Insurance Company ("Accredited"). The insurance company named on the face of the appearance bond executed by Mr. Lowry was Accredited, while International was the insurance company named on the attached power of attorney that evidenced Mr. Lowry's authority to execute criminal bail bonds of up to $1 million. According to an affidavit from International's Senior Vice President Jerry W. Watson, International "is not an affiliate, subsidiary, or parent of Accredited," and Accredited "is, in fact, a competitor of [International]." Only International received and accepted the $3,990.00 premium paid for the execution of the $570,000.00 bond.

In order to secure the $570,000.00 appearance bond executed by Mr. Lowry, defendant and his wife Raquel H. Cortez executed a promissory note in the amount of $600,000.00, made payable to "L R & M Corp, Richard Lowry," upon the condition that, "if [defendant] fails to appear for any scheduled or unscheduled court date in . . . 07 CRS 56935 in the County of Johnston, State of North Carolina and a forfeiture issued[,] this note shall be due on demand." Two deeds of trust, each representing a total indebtedness of $300,000.00 and naming "L R & M Corp" and Mr. Lowry as beneficiaries, were provided as collateral to secure the $600,000.00 promissory note.

On 18 February 2009, defendant failed to appear in court, and the Johnston County Clerk of Superior Court's Office ("Clerk's Office")

issued bond forfeiture notices to Mr. Barnes, Mr. Atkinson, and International, as the sureties of record, and to Mr. Lowry, as the bail agent for named surety International. Each notice, which was sent using the Administrative Office of the Courts' Form AOC-CR-213, indicated that the forfeiture of the bond for each surety named on the notice would become a final judgment on 23 July 2009, unless that forfeiture was set aside upon a party's motion prior to that date, or unless such motion was still pending on that date. The notices further provided that a forfeiture "will not be set aside for any . . . reason" other than those enumerated on the form.

On 22 July 2009, one day before the forfeitures were set to become final judgments, Mr. Atkinson and Mr. Barnes as sureties, and Mr. Lowry as the bail agent for named surety International, each indicated their intent to move to set aside the forfeitures by signing and dating the "Motion To Set Aside Forfeiture" section on the second page of the bond forfeiture notice forms they had received from the Clerk's Office almost five months earlier. Although Form AOC-CR-213 allows the movant to mark the checkbox next to the enumerated reason that supports their request to set aside a forfeiture, Mr. Atkinson, Mr. Barnes, and Mr. Lowry (collectively "the Bondsmen") did not indicate by checkmark which of the reasons supported their motions to set aside, and instead wrote "See attached Petition" at the top of their respective notice forms. Then, the Bondsmen and International filed a "Motion for Remission of Forfeiture" ("the Remission/Set Aside Motion") with the Clerk's Office, in which they collectively sought to "set[] forth the contended ground for relief from the order of forfeiture."

In this Remission/Set Aside Motion, the movants alleged that they each "signed as surety for the appearance of the defendant" in this matter. They further alleged that, although defendant had been located in Mexico and a federal arrest warrant had been issued for service by the FBI and by the Mexican Federal Police, defendant had not yet been served with any arrest warrant but would be "shortly." In support of their allegations, the movants then attached to the motion approximately 160 pages of e mails chronicling Mr. Lowry's efforts to locate defendant between February 2009 and July 2009. In addition to attaching a copy of the motion to the Form AOC-CR-213 they each filed with the Clerk's Office, copies of the Remission/Set Aside Motion were also served on the Johnston County District Attorney's Office ("the DA's Office") and on the attorney for the Johnston County School Board ("the Board").

Neither the DA's Office nor the Board filed objections to the 22 July 2009 motions seeking to set aside the forfeitures. Consequently, on

3 August 2009, the Johnston County Clerk of Superior Court ("the Clerk") granted the movants' requests to set aside the forfeitures. On 7 August 2009, Mr. Lowry then executed a satisfaction of the deeds of trust that had been provided by defendant and his wife as collateral to secure the promissory note that secured the appearance bonds. On 25 August 2009, the Board filed a motion against defendant and the Bondsmen pursuant to N.C.G.S. § 1A-1, Rule 60 ("the Rule 60 Motion"), in which the Board requested that the court strike the 3 August 2009 order that set aside the forfeitures. Although International was not named in the motion's caption, International was served with a copy of the Board's Rule 60 Motion, which specifically alleged that International posted a bond in the amount of $570,000.00 for the release of defendant.

In its Rule 60 Motion, the Board challenged whether the form of the movants' requests to set aside the forfeitures sufficiently complied with the procedures set forth in N.C.G.S. § 15A-544.5. Specifically, the Board asserted that the 3 August 2009 order setting aside the forfeitures should be stricken because: the movants did not indicate by checkmark on the second side of Form AOC-CR-213 which of the enumerated reasons supported their motions to set aside, and such a failure, the Board argued, was in dereliction of the requirements set forth in N.C.G.S. § 15A-544.5(b); the movants' Remission/Set Aside Motion was filed in contravention to the direction of a 12 January 2009 Administrative Order by the chief district and senior resident superior court judges for Judicial District 11 B that all motions to set aside a forfeiture made pursuant to N.C.G.S. § 15A-544.5 must be filed on Form AOC-CR-213; the documents accompanying the movants' Remission/Set Aside Motion were not sufficient evidence to support any of the grounds for which a forfeiture "shall be set aside" pursuant to N.C.G.S. § 15A-544.5(b); and the movants' Remission/Set Aside Motion was "not captioned as a Motion to Set Aside Forfeiture," but rather as a "Motion for Remission of Forfeiture," which the Board alleged caused it to believe that no objection was required to contest said motion pursuant to N.C.G.S. § 15A-544.5(d). In response to this motion, the Bondsmen urged the court to conclude that the Board's failure to object to the Remission/Set Aside Motion pursuant to N.C.G.S. § 15A-544.5(d) caused the forfeitures to be set aside "by operation of law."

On 12 October 2009, the trial court entered an order denying the Board's motion "to vacate or strike" the 3 August 2009 order that set aside the forfeitures. The trial court concluded that, "[n]otwithstanding the misleading caption on sureties' motion, the tenuous claim of the sureties under [N.C.G.S. §] 15A-544.5(b)(4)"—which provides that a forfeiture "shall be set aside" when "[t]he defendant has been served with an

Order for Arrest for the Failure to Appear on the criminal charge in the case in question as evidence by a copy of an official court record," N.C. Gen. Stat. § 15A-544.5(b)(4) (2011)—"and the sureties' loose compliance with this court's administrative order governing bond forfeitures," the Board and the DA's Office "had actual notice of the nature of the relief sought by the sureties," failed to object within the then-ten-day period[4] for doing so, and the Board "made no showing" that it was entitled to relief under Rule 60(b)(1), (b)(4), or (b)(6). The Board appealed to this Court from the trial court's 12 October 2009 denial of its Rule 60 Motion; the Board did not appeal from the 3 August 2009 order setting aside the bond forfeitures.

On 19 April 2011, this Court reversed and remanded the trial court's denial of the Board's Rule 60 Motion seeking to strike the 3 August 2009 order. *See Cortez I*, 211 N.C. App. 198, 711 S.E.2d 876, slip op. at 14. In *Cortez I*, this Court determined that the Clerk was "without authority to grant the motion" because the movants' "claimed" reasons for relief from forfeiture "[did] not come within the purview of the statute [and] the requisite documentation [wa]s entirely absent." *See id.* at 14. Consequently, this Court concluded that the 3 August 2009 order, which set aside the forfeitures, "was void," and remanded the matter "with instructions for the trial court to either dismiss Sureties' [Remission/Set Aside Motion] or deny the same for the reasons set forth herein." *Id.* at 4, 14.

However, before this Court filed its decision in *Cortez I*, defendant's case was placed on another court calendar and, again, defendant failed to appear. Then, on 17 November 2009, two weeks after defendant failed to appear for the second time, and one week after the Board gave its notice of appeal to this Court from the denial of its Rule 60 Motion that was at issue in *Cortez I*, the Clerk's Office issued another round of bond forfeiture notices to Mr. Barnes, Mr. Atkinson, and International, as sureties, and to Mr. Lowry as bail agent for named surety International. However, "the [s]ureties had not re bonded [d]efendant following his initial 18 February 2009 failure to appear"; instead, this second round of forfeiture notices were issued only "for the original bonds executed by the [s]ureties." *See Cortez II*, __ N.C. App. at __, 715 S.E.2d at 882.

---

4. At the time that the Bondsmen and International filed their motions to set aside the bond forfeiture notices in July 2009, N.C.G.S. § 15A-544.5(d)(4) provided that "the clerk shall enter an order setting aside the forfeiture" "[i]f neither the district attorney nor the board of education has filed a written objection to the motion by the *tenth* day after the motion is served." N.C. Gen. Stat. § 15A-544.5(d)(4) (2007) (emphasis added). However, this provision has since been amended to provide that a forfeiture shall be set aside if neither the district attorney nor the board of education has filed a written objection "by the twentieth day" after the motion is served. *See* 2009 N.C. Sess. Laws 847, 847, ch. 437, § 1.

Thus, in response to these second forfeiture notices, in April 2010, the Bondsmen filed their "Motion to Dismiss and Motion to Set Aside Forfeiture," in which they asserted that the 17 November 2009 notices of forfeiture "should be stricken, vacated and set aside, and dismissed," because the trial court was divested of its jurisdiction to issue notices of forfeiture once the Board gave notice of appeal from the trial court's denial of the Board's Rule 60 Motion. After hearing the matter, on 17 May 2010, the trial court entered an order denying the Bondsmen's April 2010 motions. The Bondsmen appealed to this Court from this order.

On 20 September 2011, in *Cortez II*, this Court concluded, "[w]ere we to hold that the Clerk and the . . . court had jurisdiction to enter and affirm the second orders of forfeiture, the [s]ureties would currently be liable for two separate failures to appear and, therefore, liable for two times the actual amount of the bonds executed in [d]efendant's case." *Cortez II*, __ N.C. App. at __, 715 S.E.2d at 884. Thus, after determining that "the 10 November 2009 appeal divested the Clerk and the trial court of jurisdiction to take further action relating to the 16 September 2008 bonds so long as issues surrounding those bonds remained subject to appellate review," this Court vacated the trial court's second orders of forfeiture. *Id.* at __, 715 S.E.2d at 884.

The Board then filed a motion in the trial court requesting that the court comply with this Court's decision in *Cortez I*—which held that the 3 August 2009 order setting aside the forfeitures was void—by either dismissing or denying the movants' 22 July 2009 Remission/Set Aside Motion. After hearing the matter, on 5 January 2012, the trial court entered an order ("the 5 January 2012 Order") in which it did the following: vacated its own 12 October 2009 order that denied the Board's Rule 60 Motion to strike the 3 August 2009 order setting aside the forfeitures; dismissed the movants' 22 July 2009 Remission/Set Aside Motion "for the reasons set forth in the [*Cortez I*] decision"; and ordered that the forfeitures "shall become" final judgments. The Clerk's Office then entered an electronic bond forfeiture judgment pursuant to the trial court's order, and issued a writ of execution to the Sheriff of Johnston County ("the Sheriff") giving notice that International must pay $570,000.00 plus interest and fees.

On 4 January 2012, one day before the trial court entered its order declaring that the forfeitures were final judgments, the Bondsmen and International together filed a complaint ("the Bondsmen Complaint") designated as File No. 12 CVS 30 against defendant, the State of North Carolina ("the State"), the Board, the Clerk, and the Sheriff. In the Bondsmen Complaint, plaintiffs requested that the trial court "should

STATE v. CORTEZ

[229 N.C. App. 247 (2013)]

declare that [the Clerk] did in fact terminate the Plaintiffs' contractual obligation [on the bonds]" when it entered its 3 August 2009 order setting aside the forfeitures, and that, as a consequence, plaintiffs "may not be held liable on the [b]onds," or, in the alternative, that, "even if [the Clerk's 3 August 2009] Orders did not terminate the contractual obligation, the State and the Board are estopped from seeking to impose any kind of contractual liability upon the Plaintiffs relating to the [b]onds" "to the extent that the [b]onds were formerly secured by the [d]eeds of [t]rust (which [d]eeds of [t]rust were required to be cancelled)." The Bondsmen also sought injunctive relief pursuant to 42 U.S.C. § 1983.

The day after the trial court entered its 5 January 2012 Order declaring that the forfeitures were final judgments, International returned the premium it received for defendant's bond. Then, one week later, International voluntarily dismissed its claims in the Bondsmen Complaint without prejudice pursuant to N.C.G.S. § 1A-1, Rule 41(a), and filed a separate complaint ("the International Complaint") designated as File No. 12 CVS 201 against the same defendants. In the International Complaint, International requested that the trial court declare that "no forfeiture or judgment can be held against International in the matter of the bonds executed to secure the appearance of [defendant]," because Accredited had been the insurance company named on the face of the appearance bond, and because Mr. Lowry "had no authority to attach International's Power of Attorney to an [Accredited] bond." International further requested that the court declare that it was not a party to the 5 January 2012 Order, because neither the Board's Rule 60 Motion nor the 5 January 2012 Order named International as a party in the caption.

The Board then filed motions to dismiss the Bondsmen and International Complaints pursuant to Rule 12(b)(1) and (b)(6), and on the grounds that the complaints are impermissible collateral attacks on the trial court's 5 January 2012 Order and are further barred by the doctrines of res judicata, collateral estoppel, and equitable estoppel. The State, with the Clerk, filed motions to dismiss both complaints on similar grounds. The trial court conducted hearings on the motions to dismiss in both actions. On 11 April 2012, the trial court entered an order in File No. 12 CVS 30 allowing the Board's motion to dismiss the claims alleged in the Bondsmen Complaint "as they relate to a declaratory judgment and to the substantive law of contracts involving the original contract [or appearance bond] between the plaintiffs and [the State]," on the grounds that such claims constituted a collateral attack on the 5 January 2012 Order that made the forfeitures final judgments—from which the parties had not appealed—and on the grounds that such claims were

barred by the doctrines of res judicata and collateral estoppel. However, the motion to dismiss the claim in the Bondsmen Complaint that sought injunctive relief for alleged violations of 42 U.S.C. § 1983 by the State was denied without prejudice. On the same day, the trial court also entered an order in File No. 12 CVS 201, in which it dismissed the claims that had been alleged in the International Complaint against the Board, the State, and the Clerk, on the grounds that such claims constituted a collateral attack on the 5 January 2012 Order that made the forfeitures final judgments, and on the grounds that such claims were barred by the doctrines of res judicata and collateral estoppel. International appealed to this Court from the trial court's order allowing the motions to dismiss the International Complaint, and the Bondsmen and L R & M Bailbonds, Inc. appealed from the order allowing the Board's motion to dismiss the first cause of action in the Bondmen Complaint. The trial court certified the appealability of its order regarding the Bondsmen Complaint pursuant to N.C.G.S. § 1A-1, Rule 54(b).

Then, on 17 July 2012, the Board moved for monetary sanctions pursuant to N.C.G.S. § 15A-544.5(d)(8) against defendant, International, and the Bondsmen in File No. 07 CRS 56935—the underlying criminal case for which the original appearance bonds had been made—on the grounds that the 22 July 2009 Remission/Set Aside Motion was "plainly frivolous and filed for the sole purpose of preventing the forfeitures from going into judgment." The Board requested that the court impose monetary sanctions in the amount of fifty percent of each bond against Mr. Barnes and Mr. Atkinson individually, and against Mr. Lowry and International together. On 24 August 2012, the court ordered that, because Mr. Atkinson and Mr. Barnes "promptly" paid their respective bonds after the 5 January 2012 Order, and because Mr. Lowry "is not a surety" for the $570,000.00 bond, only International "shall pay a sanction in the amount of $285,000 pursuant to [N.C.G.S.] § 15A-544.5(d)(8)." International gave timely notice of appeal from this order. The court then stayed the "execution on the civil judgment" for monetary sanctions pursuant to the pending appeal; the stay was secured by a bond.

---

A party "is permitted to appeal from an interlocutory order when the trial court enters a final judgment as to one or more but fewer than all of the claims or parties and the trial court certifies in the judgment that there is no just reason to delay the appeal." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) (internal quotation marks omitted); *see* N.C. Gen. Stat. § 1A-1, Rule 54(b) (2011) ("When more than one claim for relief is presented in an action, . . . or

when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment."). Here, on 11 April 2012, the trial court dismissed all claims against the Board arising out of the Bondsmen Complaint, but denied without prejudice the motion to dismiss the Bondsmen's prayers for injunctive relief for alleged violations of 42 U.S.C. § 1983 by the State. Accordingly, we limit our review of the 11 April 2012 order regarding File No. 12 CVS 30 to the issues certified for appeal as finally determined by the court pursuant to N.C.G.S. § 1A-1, Rule 54(b), which are those issues that "relate[] to declaratory judgment and the substantive law of contracts on the original contract between [the State] and [the Bondsmen]."

The parties bring forward the following issues on appeal: (I) whether the trial court erred by determining that International was the surety on the $570,000.00 bond executed by Mr. Lowry; (II) whether the trial court erred when it determined that International's "exclusive remedy for relief from a final judgment of forfeiture" is to appeal from that judgment pursuant to N.C.G.S. § 15A-544.8; (III) whether the trial court erred when it concluded that the International Complaint was a collateral attack on the court's 5 January 2012 Order; (IV) whether the trial court erred when it concluded that the International and Bondsmen Complaints were barred by the doctrines of res judicata and collateral estoppel; (V) whether the trial court erred when it concluded that the Board's motion for sanctions was timely; (VI) whether the trial court considered the relevant statutory factors before it imposed monetary sanctions against International; and (VII) whether the amount of the monetary sanctions imposed on International was unconstitutionally excessive, and whether the sanctions imposed violated the Ex Post Facto Clauses of the United States and North Carolina Constitutions.

I.

[1] International first contends the trial court erred by determining that it was the surety on the $570,000.00 bond executed by Mr. Lowry, because International's name does not appear on the first page of the appearance bond form.

"An appearance bond is a contract of the defendant and the surety with the State." *State v. Corl*, 58 N.C. App. 107, 111, 293 S.E.2d 264, 267 (1982). The form provided to bondsmen, insurance companies, and bail agents to evidence this contract is the Administrative Office of the Courts' Form AOC-CR-201, entitled "Appearance Bond for Pretrial Release." According to the General Statutes, "[t]he name of any

insurance company executing the bond as surety, and the name, license number, and power of appointment number of the bail agent executing the bail bond on behalf of the insurance company" "shall be entered on each bail bond executed under Part 1 of [Article 26]," N.C. Gen. Stat. § 15A-544.2(a)(4) (2011), including on "an appearance bond in a specified amount secured by . . . at least one solvent surety." N.C. Gen. Stat. § 15A-534(a)(4) (2011). Accordingly, Side One of Form AOC-CR-201 includes empty boxes under the heading "Insurance Company," in which a bail agent can indicate his or her own name and license number, as well as the name of the insurance company and the bail agent's power of appointment number for the named company. Additionally, bail agents and others who execute the form as a "Surety Appearance Bond" are directed to complete the affidavit on the reverse side of the form, which specifically directs the affiant to "Affix Stamp or Power of Attorney Here." In other words, according to the directions on the "Appearance Bond for Pretrial Release" form, in order to execute an appearance bond on behalf of an insurance company, in addition to completing Form AOC-CR-201 itself, a bail agent must also attach or affix the power of attorney that evidences his or her authority to execute a bond for the named surety.

In the present case, the insurance company named on the face of the appearance bond executed by Mr. Lowry for $570,000.00 was Accredited, while the insurance company named on the attached power of attorney evidencing Mr. Lowry's authority to execute the bond was International. We can only surmise that this inconsistency may have been borne out of Mr. Lowry's inattentive selection of two pre populated documents, since the names of the insurance companies on the appearance bond form and on the power of attorney documentation are both typewritten, while the bond-specific information for defendant's case—e.g., defendant's name, the description of the charged offenses, the file numbers for the charged offenses, the amount of the bond, the date of execution of the bond, and the name of the county and the division of the court in which defendant's case is calendared—is handwritten on these same forms. Nevertheless, regardless of the cause of this inconsistency, International argues that "basic contract and agency law in North Carolina compels a conclusion that International cannot be required to pay a bond it did not sign," and that "International was never a party to the contractual obligations of the [b]ond." We disagree.

"No contract is formed without an agreement to which at least two parties manifest an intent to be bound." *Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007). "If certain acts have been performed or contracts made on behalf of another without his authority, he has,

when he obtains knowledge thereof, an election either to accept or repudiate such acts or contracts." *Carolina Equip. & Parts Co. v. Anders*, 265 N.C. 393, 400, 144 S.E.2d 252, 257 (1965) (internal quotation marks omitted). "If he accepts them, his acceptance is a ratification of the previously unauthorized acts or contracts, and makes them as binding upon him from the time they were performed as if they had been authorized in the first place." *Id.* (internal quotation marks omitted). Thus, "intent may be inferred from failure to repudiate an unauthorized act . . . or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act." *Am. Travel Corp. v. Cent. Carolina Bank & Tr. Co.*, 57 N.C. App. 437, 442, 291 S.E.2d 892, 895 (omission in original) (internal quotation marks omitted), *disc. review denied*, 306 N.C. 555, 294 S.E.2d 369 (1982).

Here, International does not dispute that Mr. Lowry intended to enter into a contract with the State by executing an appearance bond for defendant. International also does not dispute that Mr. Lowry had actual authority to execute appearance bonds on its behalf, and does not dispute that it was within Mr. Lowry's authority to execute a bond on International's behalf in the amount of the bond at issue. Additionally, the record before us shows that International both received and accepted a $3,990.00 premium in exchange for executing the $570,000.00 bond for defendant, which International only sought to return or refund about three years later, *after* the trial court entered its 5 January 2012 Order making the $570,000.00 bond forfeiture a final judgment. Moreover, after receiving notice from the Clerk's Office pursuant to N.C.G.S. § 15A-544.4 that the $570,000.00 bond would be subject to forfeiture, on 22 July 2009, International, with the Bondsmen, filed the Remission/Set Aside Motion, in which International admitted to the court that it *"signed as surety* for the appearance of the defendant in the Superior Court of Johnston County, as appears of record." (Emphasis added.) Furthermore, the record shows that: International was served with copies of the Board's Rule 60 Motion, which sought to strike the 3 August 2009 order setting aside the forfeitures, as well as with copies of the Board's notice of appeal from the trial court's 12 October 2009 order denying the Board's Rule 60 Motion, the proposed record on appeal for *Cortez I*, and the second bond forfeiture notices sent in November 2009 that were the subject of the appeal brought before this Court in *Cortez II*; International was also represented by the same attorney as the Bondsmen with respect to this matter from at least July 2009 through 4 January 2012, when the Bondsmen Complaint—in which International was also originally a named party—was filed; and International first disclaimed its status as a surety on the $570,000.00 bond, sought to refund or return the premium

on the bond, retained separate legal counsel from the Bondsmen in this matter, voluntarily dismissed its claims in the Bondsmen Complaint, and filed its own separate declaratory judgment complaint *only after* the court entered its 5 January 2012 Order, in which the court ordered that the bond forfeitures were final. We agree that it would have been a better practice for the Clerk's Office to only have processed the appearance bond and the accompanying power of attorney if the power of attorney attached to the bond evidenced Mr. Lowry's authority to execute the bond for the company indicated on the face of the bond form. However, based on the record before us, we conclude that International's subsequent actions, admissions, and seemingly uninterrupted participation in this litigation are inconsistent with its present position disclaiming its intent to be bound by the contract entered into by its agent, Mr. Lowry, when he executed the $570,000.00 bond for defendant. *See, e.g., Carolina Equip. & Parts Co.*, 265 N.C. at 401, 144 S.E.2d at 258 ("It is what a party does, and not what he may actually intend, that fixes or ascertains his rights under the law. He cannot do one thing and intend another and very different and inconsistent thing. The law will presume that he intended the legal consequences of what he does, or, in other words, that his intention accords in all respects with the nature of his act." (internal quotation marks omitted)). Accordingly, despite the inconsistencies in the named insurance companies on the face of the appearance bond and on the accompanying power of attorney, as a result of International's later conduct which demonstrated its intent to be bound to the contract entered into by its agent, Mr. Lowry, we hold that International is the surety on the $570,000.00 bond executed by Mr. Lowry for defendant and, as such, is liable for the same.

International also asserts, in the alternative and without supporting legal authority, that "even if International were a party to the [b]ond," the bond "ceased to be a binding contract as to International" when the trial court entered its 3 August 2009 order that set aside the forfeitures. However, in *Cortez I*, this Court concluded that the 3 August 2009 order "was void" because the Clerk "lacked the authority to grant Sureties' [Remission/Set Aside Motion]." *See Cortez I*, 211 N.C. App. 198, 711 S.E.2d 876, slip op. at 4, 13. Because International fails to direct us to any authority upon which we could conclude that the court's order that was deemed void in its entirety and vacated can still be said to be "final as to International," we decline to address this assertion further.[5]

---

5. We note that, in June 2011, in an apparent response to *Cortez I*, the General Assembly amended several bail bond statutes, including those that pertain to written motions to set aside bail bond forfeitures. The amendments were preceded by the following preamble:

## II.

**[2]** International next contends the trial court erred by concluding in the 11 April 2012 order dismissing the International Complaint that International's "exclusive remedy for relief from a final judgment of forfeiture" is to appeal from that judgment pursuant to N.C.G.S. § 15A-544.8. We disagree.

"If a defendant who was released . . . upon execution of a bail bond fails on any occasion to appear before the court as required, the court shall enter a forfeiture for the amount of that bail bond in favor of the State against the defendant and against each surety on the bail bond." N.C. Gen. Stat. § 15A-544.3(a) (2011). Unless a forfeiture is set aside in accordance with the procedures set forth in N.C.G.S. § 15A-544.5, "[w]hen a forfeiture has become a final judgment[,] . . . the clerk of superior court . . . shall docket the judgment as a civil judgment against the defendant and against each surety named in the judgment." N.C. Gen. Stat. § 15A-544.7(a) (2011). "There is no relief from a final judgment of forfeiture except as provided in [N.C.G.S. § 15A-544.8]," which provides that, "[a]t any time before the expiration of three years after the date on which a judgment of forfeiture became final," any surety named in the judgment may make a written motion for relief if "[t]he person seeking relief was not given notice [of the forfeiture] as provided in G.S. 15A-544.4," or for "[o]ther extraordinary circumstances" that the court, "in its discretion," "determines should entitle [the movant] to relief" from the forfeiture. N.C. Gen. Stat. § 15A-544.8(a), (b), (c)(1) (2011).

---

Whereas, the North Carolina Court of Appeals held recently in its unpublished opinion in [*Cortez I*], COA10 474, that G.S. 15A-544.5(d)(1) constitutes a jurisdictional limitation on the clerk's authority to grant motions to set aside bond forfeitures under G.S. 15A-544.5(d)(4); and

Whereas, contrary to the Court's reasoned interpretation of G.S. 15A-544.5(d), it was not the intent of the General Assembly in S.L. 2000 133 that the description of the content of motions to set aside in G.S. 15A-544.5(d)(1) would constitute a jurisdictional limitation on the clerk's authority to grant such motions . . . .

2011 N.C. Sess. Laws 1530, 1530–31, ch. 377. Thus, it appears that the General Assembly rejected the reasoning upon which this Court relied when it determined that the 3 August 2009 order setting aside the forfeitures was void. However, since the parties did not appeal from the trial court's 5 January 2012 Order, which vacated the order that set aside the bond forfeitures "for the reasons set forth in the [*Cortez I*] decision," since we are bound by the prior panel's decision, *see In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36–37 (1989), and since "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant," *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (per curiam), *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005), we decline to address this issue further.

In the present case, International asserts only that it cannot seek relief from the forfeiture on the $570,000.00 bond pursuant to N.C.G.S. § 15A-544.8 because "International is not a surety subject to the statute." However, because we have already determined that International is the surety on the $570,000.00 bond executed by Mr. Lowry, International is subject to the bail bond forfeiture statutes, *see* N.C. Gen. Stat. § 15A-544.1 (2011) ("By executing a bail bond the defendant and each surety submit to the jurisdiction of the court and irrevocably consent to be bound by any notice given in compliance with [the 'Bail Bond Forfeiture' Part of the 'Bail' Article in the General Statutes.]"), and we find this assertion is without merit. Here, the record reflects that, after defendant failed to appear in court, International received timely and proper notice of the entry of forfeiture of the $570,000.00 bond executed by Mr. Lowry in accordance with N.C.G.S. §§ 15A-544.3 and 15A-544.4. Although an order had been entered that set aside the forfeitures, such order has since been rendered a nullity and vacated, and the forfeitures have been made final judgments. Thus, according to the applicable statutes, as the surety on the $570,000.00 bond, International may only seek relief from the now final judgment of forfeiture on this bond pursuant to N.C.G.S. § 15A-544.8. Because we have determined that International is the surety on the bond at issue, we decline to address International's concern regarding what, if any, mechanism it could have employed within the existing statutory scheme of the "Bail Bond Forfeiture" Part of Article 26 in Chapter 15A of the General Statutes to challenge any enforcement proceedings levied against it pursuant to N.C.G.S. § 15A-544.7 if it had *not* been the surety on the bond.

III.

[3] International next contends the trial court erred by concluding that the International Complaint was a collateral attack on the court's 5 January 2012 Order, which decreed the forfeitures to be final judgments.

"A collateral attack is one in which a plaintiff is not entitled to the relief demanded in the complaint unless the judgment in another action is adjudicated invalid." *Thrasher v. Thrasher*, 4 N.C. App. 534, 540, 167 S.E.2d 549, 553 (1969) (internal quotation marks omitted). "[A] collateral attack upon a judicial proceeding [is] an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it." *Hearon v. Hearon*, 44 N.C. App. 361, 362, 261 S.E.2d 9, 10 (1979) (internal quotation marks omitted). "North Carolina does not allow collateral attacks on judgments." *Reg'l Acceptance Corp. v. Old Republic Sur. Co.*, 156 N.C. App. 680, 682, 577 S.E.2d 391, 392 (2003).

International asserts, without support, that the International Complaint is not a collateral attack on the 5 January 2012 Order because its claims "do not seek an adjudication that the [Order] is invalid," but instead "merely seek[] a declaration" that the forfeiture on the $570,000.00 bond cannot be enforced against it. However, the International Complaint specifically claims: "The [$570,000.00] Bond is null and void. At minimum, the Bond is null and void as to International." The complaint then specifically requests "[t]hat the [trial court] enjoin and restrain the Defendants from entering and/or executing any judgment against the International [sic] relative to any liability upon the Bond," and that the court declare "that the Bond is not an enforceable obligation against International." In other words, International would only be entitled to the relief demanded in its complaint if the trial court declared that International—the erstwhile self-identified surety on the $570,000.00 bond now subject to enforcement proceedings under N.C.G.S. § 15A-544.7—has no liability on the $570,000.00 bond forfeiture made final by the court's 5 January 2012 Order. Because such an outcome would allow International to "avoid, defeat, [and] evade" the enforcement of the judgment made final by the court's 5 January 2012 Order, thus "deny[ing] [the order's] force and effect," *see Hearon*, 44 N.C. App. at 362, 261 S.E.2d at 10 (internal quotation marks omitted), we must conclude that the trial court did not err when it concluded that the International Complaint was a collateral attack on the court's 5 January 2012 Order.[6]

IV.

[4] International and Mr. Lowry each next contend the trial court erred when it concluded that their respective complaints, both filed in January 2012, were barred by the doctrines of res judicata and collateral estoppel, because they assert that the claims and issues raised in their complaints "could not have been litigated in an earlier proceeding due to the limitations of the Bond Forfeiture Statutes, particularly [N.C.G.S.] § 15A-544.5(b)." We conclude that the trial court's determination that the complaints were each impermissible collateral attacks on the court's 5 January 2012 Order renders unnecessary our review of whether the complaints were additionally barred by the affirmative defenses of res judicata and collateral estoppel.

---

6. Mr. Lowry does not challenge the trial court's conclusion that the first cause of action in the Bondsmen Complaint was a collateral attack on the court's 5 January 2012 Order. Thus, this determination remains undisturbed on appeal.

V.

**[5]** In July 2012, the Board moved for monetary sanctions against International and the Bondsmen pursuant to N.C.G.S. § 15A-544.5(d)(8). In August 2012, the trial court entered an order imposing monetary sanctions against International, in which it concluded:

> In light of the Sureties' "misleadingly captioned" Motion, the time required for the Court of Appeals to review the matter and issue its decision, and the Board's defense of the two lawsuits filed by the Sureties in January 2012, . . . the Board's motion for sanctions was filed in a timely fashion as there is no timing requirement for a motion for sanctions under the applicable statutes.

International argues that this conclusion was erroneous because the Board's motion for sanctions was not timely filed. We disagree.

At the time International and the Bondsmen filed the Remission/Set Aside Motion on 22 July 2009, N.C.G.S. § 15A-544.5(d) provided, in relevant part, as follows:

> If a forfeiture is not set aside . . . [pursuant to a court's order striking the defendant's failure to appear and recalling any order for arrest issued for that failure to appear], the only procedure for setting it aside is as follows:
>
> (1) At any time before the expiration of 150 days after the date on which notice was given under G.S. 15A-544.4, the defendant or any surety on a bail bond may make a written motion that the forfeiture be set aside, stating the reason and attaching the evidence specified in subsection (b) of this section.
>
> . . . .
>
> (3) Either the district attorney or the county board of education may object to the motion by filing a written objection in the office of the clerk and serving a copy on the moving party.
>
> (4) If neither the district attorney nor the board of education has filed a written objection to the motion by the tenth day after the motion is served, the clerk shall enter an order setting aside the forfeiture.

(5) If either the district attorney or the county board of education files a written objection to the motion, then not more than 30 days after the objection is filed a hearing on the motion and objection shall be held in the county, in the trial division in which the defendant was bonded to appear.

. . . .

(8) If at the hearing the court determines that the documentation required to be attached pursuant to subdivision (1) of this subsection is fraudulent or was not attached to the motion at the time the motion was filed, *the court may order monetary sanctions against the surety filing the motion,* unless the court also finds that the failure to attach the required documentation was unintentional. This subdivision shall not limit the criminal prosecution of any individual involved in the creation or filing of any fraudulent documentation.

N.C. Gen. Stat. § 15A-544.5(d) (2007) (emphasis added).

Here, International suggests, without support, that, to have been deemed timely filed, the Board's motion for sanctions must have been filed according to the same time constraints as those set out for filing written objections to a motion to set aside pursuant to N.C.G.S. § 15A-544.5(d)(3)–(5). However, we find no support for International's assertion in the plain language of the statute, which provides no express instruction as to when a party must move for sanctions against a surety pursuant to this subsection in order to be considered timely.[7] Moreover, when the General Assembly amended several bail bond statutes in 2011, including the provision at issue, the General Assembly expressly stated in the preamble of the enabling legislation that this Court's narrow interpretation of another subdivision of N.C.G.S. § 15A-544.5(d) in *Cortez I*— in which a panel of this Court determined that subdivision (d)(1) imposed a jurisdictional limitation on the clerk's authority to grant a motion to set aside under subdivision (d)(4)—"was not the intent of the General Assembly." *See* 2011 N.C. Sess. Laws 1530, 1530–31, ch. 377. Accordingly,

---

7. Although this statute was amended—just over a week after International and the Bondsmen filed the Remission/Set Aside Motion—to provide that "[a] motion for sanctions and notice of the hearing thereof shall be served on the surety not later than 10 days before the time specified for the hearing," 2009 N.C. Sess. Laws 847, 847, ch. 437, § 1, the statute still lacks direction as to when a party must move for monetary sanctions pursuant to this subsection in order for such motion to be considered timely.

in the absence of express language from the bail bond forfeiture statutes directing us to impose the narrowly-construed time limitations urged upon us by International's reading of subsection (d), and in light of the General Assembly's recent rejection of this Court's narrow interpretation of another subdivision of this same statutory subsection, we are disinclined to adopt as rule International's unsupported assertion that the Board's motion for sanctions was *per se* untimely.

Instead, the record shows that, although the Remission/Set Aside Motion was filed on 22 July 2009, it was only finally decided by the trial court on 5 January 2012. One week later, International initiated other litigation proceedings against the Board and other parties by filing its declaratory judgment action, which action was dismissed pursuant to the trial court's 11 April 2012 order. Then, three months after that final disposition, the Board filed its motion for sanctions pursuant to N.C.G.S. § 15A-544.5(d)(8). Thus, because the record shows that the Board's motion for sanctions was brought within three months of the trial court's dismissal of International's Remission/Set Aside Motion—after almost three years of litigation initiated by and with the participation of the Bondsmen and International that included two appeals to this Court—and because International was given timely notice of the hearing on the Board's motion for sanctions, which motion was heard three weeks after International received notice of such motion, we overrule International's contention that the trial court erred when it concluded, in light of the procedural complexities and anomalies of this case, that the Board's motion for sanctions was timely.

VI.

[6] International next contends the trial court abused its discretion because the court did not properly consider the relevant statutory factors before it imposed monetary sanctions against International pursuant to N.C.G.S. § 15A-544.5(d)(8). As we indicated above, at the time that International and the Bondsmen filed the Remission/Set Aside Motion, N.C.G.S. § 15A-544.5(d)(8) provided that, if the court "determines that the documentation required to be attached pursuant to subdivision (1) of this subsection is fraudulent or was not attached to the motion at the time the motion was filed, the court may order monetary sanctions against the surety filing the motion," unless "the court also finds that the failure to attach the required documentation was unintentional." N.C. Gen. Stat. § 15A-544.5(d)(8) (2007). In its August 2012 order imposing monetary sanctions on International, the trial court found and concluded that the Remission/Set Aside Motion "did not include the supporting documentation required by [N.C.G.S.] § 15A-544.5(d)." There

was no evidence in the record to support, and the court did not find, that International's failure to attach this documentation was unintentional. Thus, because International failed to attach the documentation required to support its motion seeking to set aside the forfeiture, and because such a failure is one of the grounds upon which the court is authorized to impose sanctions under N.C.G.S. § 15A-544.5(d)(8), we conclude that it was within the trial court's authority and discretion pursuant to N.C.G.S. § 15A-544.5(d)(8) to impose monetary sanctions on International. In the absence of any legal argument to support the remaining assertions advanced by International with respect to this issue on appeal, we decline to address this issue further.

VII.

[7] Finally, International contends the amount of the monetary sanctions imposed on International by the trial court was unconstitutionally excessive, and that the trial court incorrectly applied the current version of N.C.G.S. § 15A-544.5(d)(8) when it imposed sanctions upon International, thus violating the Ex Post Facto Clauses of the United States and North Carolina Constitutions. However, International's response to the Board's motion, as it appears in the record before us, does not raise these constitutional challenges. Additionally, the extensive findings and conclusions of the trial court's order on the Board's motion for sanctions do not reflect that any constitutional challenges were presented to the court for consideration nor were any such challenges ruled upon by the court. Since "a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal," see State v. Hunter, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982), we decline to consider this issue further.[8] Nonetheless, since International also suggests that the trial court abused its discretion by imposing a monetary sanction of $285,000.00 upon International,

---

8. We note that International appears to presume that the sanctions imposed by the trial court were unconstitutionally excessive and violative of the Ex Post Facto Clauses because International suggests, without legal support, that monetary sanctions imposed under N.C.G.S. § 15A-544.5(d)(8) constitute a criminal punishment. However, because the General Assembly's 2009 amendment to N.C.G.S. § 15A-544.5(d)(8) modified the statute to expressly provide that "[s]anctions awarded under this subdivision *shall be docketed* by the clerk of superior court *as a civil judgment* as provided in G.S. 1 234," 2009 N.C. Sess. Laws 847, 847, ch. 437, § 1 (emphasis added), and because "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one," *see State v. White*, 162 N.C. App. 183, 193, 590 S.E.2d 448, 455 (2004) (alteration in original) (internal quotation marks omitted), International's presumption that monetary sanctions imposed under this provision were intended by the Legislature to be criminal punishments appears to be misplaced.

we must consider whether the court's decision to impose sanctions in this amount was "manifestly unsupported by reason," or "was so arbitrary that it could not have been the result of a reasoned decision." *See White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

[8] As International concedes, at the time International filed the Remission/Set Aside Motion, N.C.G.S. § 15A-544.5(d)(8) "d[id] not include a provision setting the amount of sanctions," and "d[id] not provide any guidance or factors for the trial court to determine the amount of any sanction other than whether the documentation is fraudulent and whether the failure is intentional." However, when the General Assembly amended this provision one week after International filed the Remission/Set Aside Motion, it added the following instruction for the trial courts:

> If the court concludes that a sanction should be ordered, in addition to ordering the denial of the motion to set aside, sanctions shall be imposed as follows: (i) twenty-five percent (25%) of the bond amount for failure to sign the motion; (ii) fifty percent (50%) of the bond amount for failure to attach the required documentation; and (iii) not less than one hundred percent (100%) of the bond amount for the filing of fraudulent documentation. Sanctions awarded under this subdivision shall be docketed by the clerk of superior court as a civil judgment as provided in G.S. 1-234. The clerk of superior court shall remit the clear proceeds of the sanction to the county finance officer as provided in G.S. 115C-452.

2009 N.C. Sess. Laws 847, 847, ch. 437, § 1. Thus, if a surety fails to attach the required documentation to a motion to set aside a forfeiture filed on or after 1 January 2010, a court is now authorized and required by the General Assembly under subdivision (d)(8) to impose a sanction equal to fifty percent of the bond's amount if the court decides to impose monetary sanctions against a surety for such a failure.

Here, the Board sought $285,000.00 in monetary sanctions against International pursuant to N.C.G.S. § 15A-544.5(d)(8). As we mentioned above, the trial court concluded, and International concedes, that, at the time the Remission/Set Aside Motion was filed, there was no statutory limitation on the amount that a trial court could impose for monetary sanctions under N.C.G.S. § 15A-544.5(d)(8). The trial court also recognized that the General Assembly has since revised this statute, which now directs the trial court that "sanctions shall be imposed" according

to the percentage scheme excerpted above. The trial court then further concluded:

> 6. The version of [N.C.G.S.] § 15A-544.5(d)(8) in effect at the time the Sureties filed their [Remission/Set Aside] Motion should govern the Court's review of the Board's motion for sanctions.
>
> . . . .
>
> 9. The version of [N.C.G.S.] § 15A-544.5(d)(8) in effect at the time the Sureties filed their Motion did not prohibit the Board from filing its motion for sanctions in July 2012.
>
> . . . .
>
> 11. This Court is not bound by the current version of [N.C.G.S.] § 15A-544.5(d)(8), which would require a sanction in the amount of fifty percent of the bond for failure to attach the required documentation. The amount of any sanction(s) is within the Court's discretion.
>
> 12. The Court has authority to order the payment of sanctions by the Sureties in amounts deemed reasonable to the Court due to the Sureties' failure to attach the documentation required by [N.C.G.S.] § 15A-544.5(d)(8) to their Motion.

Since none of these conclusions are challenged by International on appeal, and in light of the record before us and the unrestrictive statutory language applicable at the time the Remission/Set Aside Motion was filed, we conclude that the trial court's decision to impose a monetary sanction in the amount of $285,000.00 against International cannot be said to have been manifestly unsupported by reason. Accordingly, we overrule this issue on appeal.

[9] Lastly, we recognize that Mr. Lowry asserts that the first cause of action in the Bondsmen Complaint stated a claim upon which relief should have been granted. However, because Mr. Lowry does not challenge the trial court's determination that this cause of action was an impermissible collateral attack on the court's 5 January 2012 Order that made the forfeitures final judgments, and because the unsupported assertion in Mr. Lowry's brief on this issue is meritless in light of the plain language of N.C.G.S. §§ 15A-544.6, 15A-544.7, and 15A-544.8, we decline to address this issue further. We further decline to address any

remaining assertions raised in International's brief in support of which it has failed to present any relevant legal authority, *see* N.C.R. App. P. 28(a), (b)(6), or which are not determinative in light of our disposition of other issues on appeal.

Affirmed.

Judges ELMORE and HUNTER, JR. concur.