493 S.E.2d 806 (1997)
The HOME INDEMNITY COMPANY, The Home Insurance Company, and City Insurance Company, Plaintiffs,
v.
HOECHST CELANESE CORPORATION; Aetna Casualty & Surety Company; AIU Insurance Company; Allstate Insurance Company; American Centennial Insurance Company; American Home Assurance Company; American Motorist Insurance Company; American Professionals Insurance Company; American Re-Insurance Company; Associated International Insurance Company; *807 Birmingham Fire Insurance Company of Pennsylvania; California Union Insurance Company; Centennial Insurance Company; Certain Underwriters at Lloyd's London and Certain London Market Insurance Companies; Certain Underwriting Syndicates of the Illinois Insurance Exchange; Certain Underwriting Syndicates of the Insurance Exchange of the Americas; Cigna Insurance Company; Columbia Casualty Company; Commercial Union Insurance Companies; Continental Casualty Company; Continental Insurance Company; Crum & Forster Insurance Company; Employers Insurance of Wausau, a Mutual Company; Employers Mutual Casualty Company; Eric Reinsurance Company; Excess Insurance Company, Limited; Federal Insurance Company; Fireman's Fund Insurance Company; First State Insurance Company; Fremont Indemnity Insurance Company; Gibraltar Casualty Company; Government Employees Insurance Company (GEICO); Harbor Insurance Company; Hartford Accident and Indemnity Company; Highlands Insurance Company; Hudson Insurance Company; Insurance Company of North America; Insurance Company of the State of Pennsylvania; International Surplus Lines Insurance Company; Lexington Insurance Company; London Guarantee and Accident Company of New York; Lumbermen's Mutual Casualty Insurance Company; Meadows Syndicate, Inc.; National Casualty Company; National Union Fire Insurance Company of Pittsburgh, P.A.; New England Insurance Company; New England Reinsurance Company; North River Insurance Company; North Star Reinsurance Corporation; Northwestern National Casualty Company; Northwestern National Insurance Company; Pacific Insurance Company; Progressive American Insurance Company; Prudential Reinsurance Company; Royal Indemnity Company; Signal Insurance Company; St. Paul Fire and Marine Insurance Company; Stonewall Insurance Company; Tortuga Casualty Insurance Company; The Travelers Indemnity Company; Twin City Fire Insurance Company; Vik Re Syndicate, Inc., Underwriters Reinsurance Company; United Insurance Companies, Inc.; X.L. Insurance Company Limited; Zurich Insurance Company; Defendants.
No. COA97-321.
Court of Appeals of North Carolina.
December 16, 1997.
*809 Womble Carlyle Sandridge & Rice, P.L.L.C. by Richard T. Rice and Reid C. Adams, Jr., Winston-Salem, for plaintiff-appellant The Home Indemnity Company.
Rivkin Radler & Kremer by Richard S. Feldman, Uniondale, NY, for defendant-appellants Commercial Union Insurance Company and Fireman's Fund Insurance Company.
Bennett & Blancato by Richard Bennett, Winston-Salem, for defendant-appellants Commercial Union Insurance Company and Fireman's Fund Insurance Company.
Weissman Nowack Curry & Zaleon, P.C. by Linda B. Foster, Atlanta, GA, for defendant-appellant Aetna Casualty and Surety Company.
Underwood Kinsey Warren & Tucker, P.A. by C. Ralph Kinsey, Jr., Charlotte, for defendant-appellant Aetna Casualty and Surety Company.
Cohn & Russell by Vicky Kaiser Russell, Chicago, IL, for defendant-appellants Century Indemnity Company, Successor to CCI Insurance Company, Successor to Insurance Company of North America.
Law Office of Mark A. Michael by Mark A. Michael, Charlotte, for defendant-appellants Century Indemnity Company, Successor to CCI Insurance Company, Successor to Insurance Company of North America.
Mendes & Mount, LLP by Henry Lee, New York City, for defendant-appellants Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies.
Kilpatrick Stockton by Jackson N. Steele, Charlotte, for defendant-appellants Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies.
Melito & Adolfsen, P.C. by Louis G. Adolfsen and Catherine E. Rothman, New York City, for defendant-appellants Hartford Accident & Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and New England Insurance Company.
Cansler Lockhart Campbell Evans Bryant & Garlitz, P.A. by Hugh B. Campbell, Charlotte, for defendant-appellants Hartford Accident & Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and New England Insurance Company.
Parker, Poe, Adams & Bernstein, L.L.P. by Irvin W. Hankins III and Josephine H. Hicks, Charlotte, for defendant-appellee Hoechst Celanese Corporation.
Lowenstein, Sandler, Kohl, Fisher & Boylan, by Michael Dore and David Field, Roseland, NJ, for defendant-appellee Hoechst Celanese Corporation.
EAGLES, Judge.
When evaluating the propriety of a trial court's stay order the appropriate standard of review is abuse of discretion. Home Indem. Co. v. Hoechst-Celanese Corp., 99 N.C.App. 322, 325, 393 S.E.2d 118, 120 (1990), appeal dismissed and cert. denied, 327 N.C. 428, 396 S.E.2d 611 (1990). A trial court may be reversed for abuse of discretion only if the trial court made "a patently arbitrary decision, manifestly unsupported by reason." Buford v. General Motors Corp., 339 N.C. 396, 406, 451 S.E.2d 293, 298 (1994). Rather, appellate review is limited to "insur[ing] that the decision could, in light of the factual context in which it was made, be the product of reason." Little v. Penn Ventilator *810 Co., 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986).
The plaintiffs argue that staying the trial of the non-North Carolina claims and effectively severing this comprehensive action constitutes an abuse of discretion by the trial court. The plaintiffs argue that a comprehensive action is preferable for three reasons: 1) the "weight of authority" favors a comprehensive action; 2) a comprehensive action avoids delay; and 3) a comprehensive action avoids inconsistent interpretations of insurance policy language. These reasons are not persuasive individually or collectively.
The "weight of authority" cited by the plaintiffs are cases from other jurisdictions and thereby not binding. Delay will not necessarily result in trying the cases in the states where the sites are located. After eight years of comprehensive litigation, including four years of litigation in North Carolina, the insured has obtained a substantive ruling on only one out of ninety-four sites. Additionally, the problem with inconsistent interpretation of policy language will not be avoided by keeping non-North Carolina sites in North Carolina. If the stay order is reversed, the North Carolina courts would be required to determine which state's law to apply to each claim, to find relevant facts at each site and then to apply the language to the facts under the applicable state law. The possibility of inconsistent interpretations among the several states' laws is no less likely in North Carolina than in the courts of the several states.
The plaintiffs also argue that the stay order effectively wastes four years of litigation already expended in this action. However, HCC has agreed to a "universal case management order" to facilitate litigation in all eight states. Further there is no indication that courts in other states will require parties to re-conduct discovery that has already taken place in this litigation.
The plaintiffs next argue that affirming the stay order would work a "substantial injustice" on the parties. We disagree. G.S. 1-75.12 provides that a trial court should stay an action only if "the judge shall find that it would work a substantial injustice for the action to be tried in a court of this state." Relevant facts that may be considered include: the nature of the case, the applicable law, the convenience of witnesses, the availability of process to compel the attendance of witnesses, the ease of access to sources of proof, the burden of litigating matters of local concern in local courts, and other practical considerations which would make the trial easy, expeditious and inexpensive. Motor Inn Management, Inc. v. Irvin-Fuller Dev. Co., Inc., 46 N.C.App. 707, 713, 266 S.E.2d 368, 371 (1980), appeal dismissed and cert. denied, 301 N.C. 93, 273 S.E.2d 299 (1980). Courts need not consider every factor. Lawyers Mut. Liab. Ins. Co. of North Carolina v. Nexsen Pruet Jacobs & Pollard, 112 N.C.App. 353, 357, 435 S.E.2d 571, 574 (1993).
By December 1996, this case had become essentially a non-North Carolina case. After Judge Gray entered partial summary judgment in COA97-459, COA96-1408 and COA96-1435, this litigation concerned the availability of insurance coverage for costs of clean up in environmental contamination situations in states other than North Carolina. With the North Carolina issues essentially resolved, the trial court reasonably concluded that continuing to litigate North Carolina coverage issues regarding the non-North Carolina sites was an unreasonable and unnecessary burden on the North Carolina courts.
While the issue of which states' law will apply is not resolved as to all the claims, the applicable law will not be North Carolina law. There are two competing viewsthe traditional view of lex loci and the alternate site specific view. Traditionally, lex loci or the law of the place where a contract is made determines matters bearing on the execution, interpretation, and validity of the contract. Computer Sales International, Inc. v. Forsyth Memorial Hospital, Inc., 112 N.C.App. 633, 635, 436 S.E.2d 263, 265 (1993), cert. denied, 335 N.C. 768, 442 S.E.2d 513 (1994), see Tennessee-Carolina Transp., Inc. v. Strick Corp., 286 N.C. 235, 238, 210 S.E.2d 181, 183 (1974). The alternate approach has been the site specific approach. In these types of environmental insurance contracts *811 where there is no choice of law provision, "the state where the toxic waste comes to rest is the state whose law will apply, provided that it was reasonably foreseeable that the waste would come to rest there." Leksi, Inc. v. Federal Ins. Co., 736 F.Supp. 1331, 1336 (D.N.J.1990). No matter which approach is followed in this litigation, North Carolina law will not be applied. Both parties to this suit are headquartered in states other than North Carolina. Further, the essential acts critical to determining where the contract was entered into and which states' law controls were almost all done outside North Carolina. This would require a North Carolina trial court to apply the law of at least one and perhaps as many as twenty other states.
Further, the convenience of witnesses and availability of evidence factors all favor affirming Judge Gray's stay order. The determination of coverage at each site will depend, at least in part, on the facts at each site. Those facts likely will be proven by witnesses who have worked at the site and know the history surrounding the site. Accordingly, we conclude that these factors militate in favor of affirming the stay order.
Generally it is more desirable to litigate local matters in local courts. Motor Inn Management, Inc., 46 N.C.App. at 713, 266 S.E.2d at 371. Each state's court has an interest in issues concerning clean-up of environmental contamination in its own state. This factor also bolsters the trial court's decision to stay the coverage litigation in North Carolina for the non-North Carolina sites. Accordingly, we conclude that the trial court did not err when it stayed the North Carolina action and required site-specific litigation.
The appellants also argue that the trial court's decision should be reversed because there were no findings of fact or conclusions that a trial of all claims in North Carolina would work a substantial injustice. We disagree.
The Court found:
6. Considering the nature of this case, the applicable law, the convenience of witnesses, the availability of compulsory process to produce witnesses, the cost of obtaining attendance of witnesses, the relative ease of access to sources of proof, the burden of litigating matters not of local concern, the desirability of litigating matters of local concern in local courts, and other practical considerations, this court finds, prior to ruling on the pending motion to amend and HCC's pending motion for a trial date on the Pampa trial site, and in the exercise of its discretion, that the non-North Carolina sites in this case should be ruled on by courts of states in which those sites are located.
Paragraph six of the stay order lists the guiding factors for determining whether trying the entire case in North Carolina would work "substantial injustice." Because the trial court obviously considered those factors, and its consideration of those factors led the trial court to conclude that the non-North Carolina sites should be tried in their own states, the trial court's findings were sufficient to support the discretionary grant of a stay of the North Carolina litigation regarding the non-North Carolina sites.
Plaintiffs also argue that there were no changed conditions to warrant Judge Gray's stay order overruling Judge Downs' 18 December 1992 order which lifted the earlier stay and permitted the controversy to proceed in North Carolina. Plaintiffs argue that it was error for the trial court to suggest that the partial summary judgment ruling at the North Carolina sites was a changed condition. Moreover, plaintiffs argue that their motion to amend would not have materially changed their case at all and therefore is not a change in condition. We are not persuaded.
The trial court has discretion to modify a prior superior court ruling when changed conditions warrant the modification. Calloway v. Ford Motor Co., 281 N.C. 496, 502, 189 S.E.2d 484, 489 (1972). Here, the trial court specifically found:
Since the entry of an order lifting the stay of this North carolina action on December 18, 1992, significant developments and changed circumstances warrant a modification of that order, in the interests of justice *812 and in the court's discretion in managing this case.
The changed circumstances were 1) the entry of partial summary judgment concerning the Salisbury, North Carolina site; and 2) the plaintiffs' motion to amend the complaint to add 142 additional sites and claims to the case. Each of these developments significantly changed the nature of the case. With these changes, the litigation in North Carolina is now essentially a non-North Carolina case applying the law of states other than North Carolina.
As to the partial summary judgment motion, Judge Gray applied the policy language interpreted under North Carolina law to the Salisbury sites effectively ending the controversies as to all the North Carolina sites. In the non-North Carolina cases, the trial court will have to reexamine and reinterpret the insurance policy language under the law of one or more states (other than North Carolina), determine the facts as to each of those sites and apply the relevant policy language. In short, the nature of case has been completely changed from a comprehensive case concerning sites located in North Carolina and elsewhere into a case now focused primarily on sites outside of North Carolina. Accordingly, we overrule this assignment of error.
For the reasons stated, we conclude that the trial court's entry of its 13 January 1997 stay order was a proper and rational exercise of its discretion and the order is affirmed.
Affirmed.
WYNN and MARK D. MARTIN, JJ., concur.