IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-815

Filed: 15 December 2015

Henderson County, No. 13 CVS 1778

SOUTHEASTERN SURETIES GROUP, INC., Plaintiff,

v.

INTERNATIONAL FIDELITY INSURANCE COMPANY and RICHARD L. LOWRY, Defendants.

Appeal by plaintiff from order entered 3 March 2014 by Judge Marvin P. Pope, Jr. in Superior Court, Henderson County. Heard in the Court of Appeals 6 January 2015.

> *McGuire, Wood & Bissette, P.A., by Joseph P. McGuire and Starling B. Underwood III, for plaintiff-appellant.*

> *Ellis & Winters LLP, by Matthew W. Sawchak, Leslie C. Packer, and Nora F. Sullivan for defendant-appellee International Fidelity Insurance Company*

STROUD, Judge.

Plaintiff Southeastern Sureties Group, Inc., appeals trial court order granting defendant International Fidelity Insurance Company's motion to stay. For the following reasons, we affirm.

I.      Background

This case has a lengthy and complex history, beginning with Elder Cortez, who was granted pretrial release on charges for several felonies upon posting a bond of $600,000.00. *State v. Cortez*, ___ N.C. App. ___, ___, 747 S.E.2d 346, 349 (2013). Mr.

Cortez failed to appear for court and has never been found, *see International Fidelity Insurance Co. v. Apodaca*, ___ F. Supp. 2d ___, (D. N.J. 2015) (Civ. No. 13-06077), leading to proceedings arising from the bond forfeiture and eventually metastasizing into numerous civil actions in two states including many individual and corporate parties and three prior appeals to this Court. *See id.*; *Cortez*, ___ N.C. App.at ___, 747 S.E.2d at 349-54. Some background of this case is required for an understanding of the issues presented in this appeal. Some of this information comes from pleadings and documents that may not directly involve the current two parties in this appeal. We will first summarize the background including some "facts" or allegations that may not have been established before us on this appeal. We are not relying on any contested facts or mere allegations in our legal analysis but include them here to the extent needed to understand the case currently before us.

A.     Creation of Southeastern and its Relationship with International

In 1984, Mr. Thomas Apodaca became a licensed bail bondsman. In 1987, defendant International Fidelity Insurance Company ("International") entered into a contractual relationship with Mr. Apodaca which made him a bond producer for defendant International in North Carolina ("1987 Contract"). According to defendant International, through the contractual relationship, Mr. Apodaca wrote bonds on behalf of International and dealt with the financial aspects of the bonds along with ensuring that bonded individuals appeared in court. Mr. Apodaca was responsible

for any sub-producers who aided him, while defendant International was responsible as the surety of the bonds Mr. Apodaca executed on its behalf, and Mr. Apodaca was to indemnify defendant International for any losses sustained. Although this 1987 Contract is central to many of the arguments in this case, unfortunately it is not part of our record on appeal.

In 1995, plaintiff Southeastern Sureties Group, Inc. ("Southeastern") was incorporated and Mr. Apodaca became its president. According to Mr. Apodaca, Southeastern was the general agent for defendant International; how or when this agency relationship arose is unclear as the only relevant contract we are aware of was the 1987 Contract between Mr. Apodaca and defendant International, approximately eight years before plaintiff Southeastern was incorporated. Nonetheless, Mr. Apodaca claims that plaintiff Southeastern had a sub-agent executing bonds on behalf of defendant International, Mr. Richard Lowry.

In 2004, Mr. Apodaca and defendant International entered into another contract ("2004 Contract"). Plaintiff Southeastern, which had been incorporated at this point, is not mentioned in the 2004 Contract. The 2004 Contract states it is between Mr. Apodaca and defendant International, and Mr. Apodaca signed the 2004 Contract only on his own behalf. The 2004 Contract sets out various terms governing the relationship between Mr. Apodaca and defendant International including an "APPLICABLE LAW" provision as follows:

> In event of dispute or litigation, exclusive jurisdiction and venue shall lie in the State of New Jersey. The parties hereby agree that any legal action brought to enforce any of the rights of the parties under this agreement or arising out of the disputes between them shall be brought only in the State or Federal courts of New Jersey.

B.    The Cortez Bond Forfeiture

Since the bond forfeiture from which this case arises has been addressed in three prior appeals to this Court, we will use the background from one of the prior cases and emphasize portions relating to any individual or entity as relevant to issues raised in this appeal:

> Twenty-nine-year-old Elder Giovani Cortez ("defendant") was arrested and indicted for the offenses of first-degree kidnapping, first-degree rape of a child under the age of thirteen, and taking indecent liberties with a child, which offenses were alleged to have occurred on 23 August 2007. Defendant was authorized to be released upon the execution of a secured bond in the amount of $2,000,000.00, which was later reduced to $600,000.00. On 16 September 2008, four months after defendant's secured bond was reduced, defendant was released on bail subject to the conditions of appearance bonds executed by Tony L. Barnes, Larry D. Atkinson, and *Richard L. Lowry* in the amounts of $20,000.00, $10,000.00, and *$570,000.00*, respectively.
>
> Mr. Barnes executed the $20,000.00 bond as an accommodation bondsman, and Mr. Atkinson executed the $10,000.00 bond as a professional bondsman, which rendered each a surety on their respective bonds. Because *Mr. Lowry executed the $570,000.00 bond as a "bail agent," the surety for that bond was the insurance company on behalf of which Mr. Lowry executed the bond.* The record shows that, at the time the bond was executed, *Mr. Lowry was authorized to execute bail bonds both for International*

*Fidelity Insurance Company ("International")* and for Accredited Insurance Company ("Accredited"). The insurance company named on the face of the appearance bond executed by Mr. Lowry was Accredited, while *International was the insurance company named on the attached power of attorney that evidenced Mr. Lowry's authority to execute criminal bail bonds of up to $1 million.* According to an affidavit from International's Senior Vice President Jerry W. Watson, International is not an affiliate, subsidiary, or parent of Accredited, and Accredited is, in fact, a competitor of International. *Only International received and accepted the $3,990.00 premium paid for the execution of the $570,000.00 bond.*

In order to secure the $570,000.00 appearance bond executed by Mr. Lowry, defendant and his wife Raquel H. Cortez executed a promissory note in the amount of $600,000.00, made payable to L R & M Corp, Richard Lowry, upon the condition that, if defendant fails to appear for any scheduled or unscheduled court date in 07 CRS 56935 in the County of Johnston, State of North Carolina and a forfeiture issued, this note shall be due on demand. Two deeds of trust, each representing a total indebtedness of $300,000.00 and naming L R & M Corp and Mr. Lowry as beneficiaries, were provided as collateral to secure the $600,000.00 promissory note.

On 18 February 2009, defendant failed to appear in court, and *the Johnston County Clerk of Superior Court's Office ("Clerk's Office") issued bond forfeiture notices to Mr. Barnes, Mr. Atkinson, and International, as the sureties of record, and to Mr. Lowry, as the bail agent for named surety International.* Each notice, which was sent using the Administrative Office of the Courts' Form AOC–CR–213, indicated that the forfeiture of the bond for each surety named on the notice would become a final judgment on 23 July 2009, unless that forfeiture was set aside upon a party's motion prior to that date, or unless such motion was still pending on that date. The notices further provided that a forfeiture will not be set aside for any reason other than those enumerated on the form.

On 22 July 2009, one day before the forfeitures were

set to become final judgments, Mr. Atkinson and Mr. Barnes as sureties, and *Mr. Lowry as the bail agent for named surety International, each indicated their intent to move to set aside the forfeitures by signing and dating the Motion To Set Aside Forfeiture* section on the second page of the bond forfeiture notice forms they had received from the Clerk's Office almost five months earlier. Although Form AOC–CR–213 allows the movant to mark the checkbox next to the enumerated reason that supports their request to set aside a forfeiture, Mr. Atkinson, Mr. Barnes, and Mr. Lowry (collectively "the Bondsmen") did not indicate by checkmark which of the reasons supported their motions to set aside, and instead wrote See attached Petition at the top of their respective notice forms. Then, *the Bondsmen and International filed a Motion for Remission of Forfeiture ("the Remission/Set Aside Motion") with the Clerk's Office, in which they collectively sought to set forth the contended ground for relief from the order of forfeiture.*

In this Remission/Set Aside Motion, the movants alleged that they each signed as surety for the appearance of the defendant in this matter. They further alleged that, although defendant had been located in Mexico and a federal arrest warrant had been issued for service by the FBI and by the Mexican Federal Police, defendant had not yet been served with any arrest warrant but would be shortly. In support of their allegations, the movants then attached to the motion approximately 160 pages of e-mails chronicling Mr. Lowry's efforts to locate defendant between February 2009 and July 2009. In addition to attaching a copy of the motion to the Form AOC–CR–213 they each filed with the Clerk's Office, copies of the Remission/Set Aside Motion were also served on the Johnston County District Attorney's Office ("the DA's Office") and on the attorney for the Johnston County School Board ("the Board").

Neither the DA's Office nor the Board filed objections to the 22 July 2009 motions seeking to set aside the forfeitures. Consequently, on 3 August 2009, the Johnston County Clerk of Superior Court ("the Clerk")

granted the movants' requests to set aside the forfeitures. On 7 August 2009, Mr. Lowry then executed a satisfaction of the deeds of trust that had been provided by defendant and his wife as collateral to secure the promissory note that secured the appearance bonds. On 25 August 2009, the Board filed a motion against defendant and the Bondsmen pursuant to N.C.G.S. § 1A–1, Rule 60 ("the Rule 60 Motion"), in which the Board requested that the court strike the 3 August 2009 order that set aside the forfeitures. *Although International was not named in the motion's caption, International was served with a copy of the Board's Rule 60 Motion, which specifically alleged that International posted a bond in the amount of $570,000.00 for the release of defendant.*

In its Rule 60 Motion, the Board challenged whether the form of the movants' requests to set aside the forfeitures sufficiently complied with the procedures set forth in N.C.G.S. § 15A–544.5. Specifically, the Board asserted that the 3 August 2009 order setting aside the forfeitures should be stricken because: the movants did not indicate by checkmark on the second side of Form AOC–CR–213 which of the enumerated reasons supported their motions to set aside, and such a failure, the Board argued, was in dereliction of the requirements set forth in N.C.G.S. § 15A–544.5(b); the movants' Remission/Set Aside Motion was filed in contravention to the direction of a 12 January 2009 Administrative Order by the chief district and senior resident superior court judges for Judicial District 11–B that all motions to set aside a forfeiture made pursuant to N.C.G.S. § 15A–544.5 must be filed on Form AOC–CR–213; the documents accompanying the movants' Remission/Set Aside Motion were not sufficient evidence to support any of the grounds for which a forfeiture shall be set aside pursuant to N.C.G.S. § 15A–544.5(b); and the movants' Remission/Set Aside Motion was not captioned as a Motion to Set Aside Forfeiture, but rather as a Motion for Remission of Forfeiture, which the Board alleged caused it to believe that no objection was required to contest said motion pursuant to N.C.G.S. § 15A–544.5(d). In response to this motion, the Bondsmen urged the court to conclude

that the Board's failure to object to the Remission/Set Aside Motion pursuant to N.C.G.S. § 15A–544.5(d) caused the forfeitures to be set aside by operation of law.

On 12 October 2009, the trial court entered an order denying the Board's motion to vacate or strike the 3 August 2009 order that set aside the forfeitures. The trial court concluded that, notwithstanding the misleading caption on sureties' motion, the tenuous claim of the sureties under N.C.G.S. § 15A–544.5(b)(4)—which provides that a forfeiture shall be set aside when the defendant has been served with an Order for Arrest for the Failure to Appear on the criminal charge in the case in question as evidence by a copy of an official court record, N.C. Gen. Stat. § 15A–544.5(b)(4) (2011)—and the sureties' loose compliance with this court's administrative order governing bond forfeitures, the Board and the DA's Office had actual notice of the nature of the relief sought by the sureties, failed to object within the then-ten-day period for doing so, and the Board made no showing that it was entitled to relief under Rule 60(b)(1), (b)(4), or (b)(6). The Board appealed to this Court from the trial court's 12 October 2009 denial of its Rule 60 Motion; the Board did not appeal from the 3 August 2009 order setting aside the bond forfeitures.

On 19 April 2011, this Court reversed and remanded the trial court's denial of the Board's Rule 60 Motion seeking to strike the 3 August 2009 order. See *Cortez I*, 211 N.C. App. 198, 711 S.E.2d 876, slip op. at 14. In *Cortez I*, this Court determined that the Clerk was without authority to grant the motion because the movants' claimed reasons for relief from forfeiture did not come within the purview of the statute and the requisite documentation was entirely absent. Consequently, this Court concluded that the 3 August 2009 order, which set aside the forfeitures, was void, and remanded the matter with instructions for the trial court to either dismiss Sureties' Remission/Set Aside Motion or deny the same for the reasons set forth herein.

However, before this Court filed its decision in *Cortez I*, defendant's case was placed on another court calendar and, again, defendant failed to appear. Then, on

17 November 2009, two weeks after defendant failed to appear for the second time, and one week after the Board gave its notice of appeal to this Court from the denial of its Rule 60 Motion that was at issue in *Cortez I*, the Clerk's Office issued another round of bond forfeiture notices to Mr. Barnes, Mr. Atkinson, *and International, as sureties, and to Mr. Lowry as bail agent for named surety International.* However, the sureties had not re-bonded defendant following his initial 18 February 2009 failure to appear; instead, this second round of forfeiture notices were issued only for the original bonds executed by the sureties. *See Cortez II*, 215 N.C. App. at ___, 715 S.E.2d at 882. Thus, in response to these second forfeiture notices, in April 2010, *the Bondsmen filed their Motion to Dismiss and Motion to Set Aside Forfeiture, in which they asserted that the 17 November 2009 notices of forfeiture should be stricken, vacated and set aside, and dismissed, because the trial court was divested of its jurisdiction to issue notices of forfeiture once the Board gave notice of appeal from the trial court's denial of the Board's Rule 60 Motion.* After hearing the matter, on 17 May 2010, the trial court entered an order denying the Bondsmen's April 2010 motions. The Bondsmen appealed to this Court from this order.

On 20 September 2011, in *Cortez II*, this Court concluded, were we to hold that the Clerk and the court had jurisdiction to enter and affirm the second orders of forfeiture, the sureties would currently be liable for two separate failures to appear and, therefore, liable for two times the actual amount of the bonds executed in defendant's case. Thus, after determining that the 10 November 2009 appeal divested the Clerk and the trial court of jurisdiction to take further action relating to the 16 September 2008 bonds so long as issues surrounding those bonds remained subject to appellate review, this Court vacated the trial court's second orders of forfeiture.

The Board then filed a motion in the trial court requesting that the court comply with this Court's decision in *Cortez I*—which held that the 3 August 2009 order setting aside the forfeitures was void—by either dismissing or denying the movants' 22 July 2009 Remission/Set Aside

Motion. After hearing the matter, on 5 January 2012, the trial court entered an order ("the 5 January 2012 Order") in which it did the following: vacated its own 12 October 2009 order that denied the Board's Rule 60 Motion to strike the 3 August 2009 order setting aside the forfeitures; dismissed the movants' 22 July 2009 Remission/Set Aside Motion for the reasons set forth in the *Cortez I* decision; and ordered that the forfeitures shall become final judgments. *The Clerk's Office then entered an electronic bond forfeiture judgment pursuant to the trial court's order, and issued a writ of execution to the Sheriff of Johnston County ("the Sheriff") giving notice that International must pay $570,000.00 plus interest and fees.*

On 4 January 2012, one day before the trial court entered its order declaring that the forfeitures were final judgments, *the Bondsmen and International together filed a complaint ("the Bondsmen Complaint") designated as File No. 12 CVS 30 against defendant, the State of North Carolina ("the State"), the Board, the Clerk, and the Sheriff.* In the Bondsmen Complaint, plaintiffs requested that the trial court should declare that the Clerk did in fact terminate the Plaintiffs' contractual obligation on the bonds when it entered its 3 August 2009 order setting aside the forfeitures, and that, as a consequence, plaintiffs may not be held liable on the bonds, or, in the alternative, that, even if the Clerk's 3 August 2009 Orders did not terminate the contractual obligation, the State and the Board are estopped from seeking to impose any kind of contractual liability upon the Plaintiffs relating to the bonds to the extent that the bonds were formerly secured by the deeds of trust (which deeds of trust were required to be cancelled). The Bondsmen also sought injunctive relief pursuant to 42 U.S.C. § 1983.

*The day after the trial court entered its 5 January 2012 Order declaring that the forfeitures were final judgments, International returned the premium it received for defendant's bond. Then, one week later, International voluntarily dismissed its claims in the Bondsmen Complaint without prejudice pursuant to N.C.G.S. § 1A–1, Rule 41(a), and filed a separate complaint ("the*

*International Complaint") designated as File No. 12 CVS 201 against the same defendants. In the International Complaint, International requested that the trial court declare that no forfeiture or judgment can be held against International in the matter of the bonds executed to secure the appearance of defendant, because Accredited had been the insurance company named on the face of the appearance bond, and because Mr. Lowry had no authority to attach International's Power of Attorney to an Accredited bond. International further requested that the court declare that it was not a party to the 5 January 2012 Order, because neither the Board's Rule 60 Motion nor the 5 January 2012 Order named International as a party in the caption.*

The Board then filed motions to dismiss the Bondsmen and International Complaints pursuant to Rule 12(b)(1) and (b)(6), and on the grounds that the complaints are impermissible collateral attacks on the trial court's 5 January 2012 Order and are further barred by the doctrines of res judicata, collateral estoppel, and equitable estoppel. The State, with the Clerk, filed motions to dismiss both complaints on similar grounds. The trial court conducted hearings on the motions to dismiss in both actions. On 11 April 2012, the trial court entered an order in File No. 12 CVS 30 allowing the Board's motion to dismiss the claims alleged in the Bondsmen Complaint as they relate to a declaratory judgment and to the substantive law of contracts involving the original contract or appearance bond between the plaintiffs and the State, on the grounds that such claims constituted a collateral attack on the 5 January 2012 Order that made the forfeitures final judgments—from which the parties had not appealed—and on the grounds that such claims were barred by the doctrines of res judicata and collateral estoppel. However, the motion to dismiss the claim in the Bondsmen Complaint that sought injunctive relief for alleged violations of 42 U.S.C. § 1983 by the State was denied without prejudice. On the same day, *the trial court also entered an order in File No. 12 CVS 201, in which it dismissed the claims that had been alleged in the International Complaint against the Board, the State, and*

> *the Clerk, on the grounds that such claims constituted a collateral attack on the 5 January 2012 Order that made the forfeitures final judgments, and on the grounds that such claims were barred by the doctrines of res judicata and collateral estoppel. International appealed to this Court from the trial court's order allowing the motions to dismiss the International Complaint,* and the Bondsmen and L R & M Bailbonds, Inc. appealed from the order allowing the Board's motion to dismiss the first cause of action in the Bondmen Complaint. The trial court certified the appealability of its order regarding the Bondsmen Complaint pursuant to N.C.G.S. § 1A–1, Rule 54(b).
>
> Then, on 17 July 2012*, the Board moved for monetary sanctions pursuant to N.C.G.S. § 15A–544.5(d)(8) against defendant, International, and the Bondsmen in File No. 07 CRS 56935—the underlying criminal case for which the original appearance bonds had been made—on the grounds that the 22 July 2009 Remission/Set Aside Motion was plainly frivolous and filed for the sole purpose of preventing the forfeitures from going into judgment.* The Board requested that the court impose monetary sanctions in the amount of fifty percent of each bond against Mr. Barnes and Mr. Atkinson individually, and against Mr. Lowry and International together. On 24 August 2012, *the court ordered that, because Mr. Atkinson and Mr. Barnes promptly paid their respective bonds after the 5 January 2012 Order, and because Mr. Lowry is not a surety for the $570,000.00 bond, only International shall pay a sanction in the amount of $285,000 pursuant to N.C.G.S. § 15A–544.5(d)(8). International gave timely notice of appeal from this order.* The court then stayed the execution on the civil judgment for monetary sanctions pursuant to the pending appeal; the stay was secured by a bond.

*Cortez*, ___ N.C. App. at ___, 747 S.E.2d at 349-54 ("*Cortez III*") (emphasis added)

(citations, quotation marks, ellipses, brackets, and footnotes omitted).  Ultimately, in

*Cortez III*, this Court affirmed all of the trial court's orders appealed in *Cortez III*;

thus, defendant International owed $570,000.00 plus interest and fees for the bond forfeiture and $285,000.00 in sanctions. *See id.* at \_\_\_, 747 S.E.2d at 354.

C.     The Federal New Jersey Case Before This Appeal

In October of 2013, defendant International filed a complaint against Mr. Apodaca and Lisa Tate Apodaca, Mr. Apodaca's wife, in federal court in New Jersey for breach of contract claiming that pursuant to the 1987 Contract, Mr. Apodaca was required to indemnify defendant International for the money it was being ordered to pay in North Carolina for the Cortez bond forfeiture.[1]

D.     The North Carolina Case

On 1 November 2013, plaintiff Southeastern filed a complaint against defendants International and Mr. Lowry in North Carolina seeking a declaratory judgment which would, in effect, protect plaintiff Southeastern from any claim for indemnification for the Cortez bond.   According to the allegations in the complaint, plaintiff Southeastern was defendant International's "general agent . . . and was authorized to execute bail bonds for" defendant International.  Plaintiff Southeastern requested:

> (A)     That the Court declare that International was not a surety on the Bond;
>
> (B)     That the Court declare that International's return and/or refund of premium on the Bond released Southeastern from any obligation arising out of the

---

[1] As further discussed below, Mrs. Apodaca was later removed as a party to the New Jersey case and plaintiff Southeastern was added as a defendant.

Bond and waived any claim against Southeastern relating to the Bond;

(C)     That the Court declare that the actions and omissions of International and Mr. Lowry resulting in the release of the collateral securing the Bond, the imposition of sanctions of $285,000 by the court, the Forfeiture becoming final and a loss on the Bond that was unnecessary and avoidable released and discharged Southeastern from any obligation under the Bond;

(D)     That the Court declare that International's breach of duty and negligence in connection with the Bond precludes any recovery against Southeastern relating to the Bond;

(E)     That Southeastern have and recover judgment against International in an amount in excess of $15,000, plus interest thereon at 8% per annum;

(F)     That International be estopped from claiming that it was the insurance company on the Bond and/or that the Bond is enforceable;

(G)     That Southeastern have a trial by jury;

(H)     That the costs of this action be taxed to International and Mr. Lowry; and

(I)     That Southeastern have such further relief as the Court may deem just and proper.

On or about 21 November 2013, defendant International amended its complaint pending in the federal court in New Jersey, removing Mrs. Apodaca as a named defendant and adding Southeastern as a defendant. On 27 December 2013, in the North Carolina case, defendant International filed a motion to dismiss plaintiff

Southeastern's claims or, in the alternative, "stay proceedings in favor of an already filed action in the U.S. District Court for the District of New Jersey." On or about 27 January 2014, plaintiff Southeastern filed a motion "to enjoin International Fidelity Insurance Company from proceeding with its parallel action in New Jersey[,]" (original in all caps), stating:

> Pursuant to Rule 65 of the North Carolina Rules of Civil Procedure, Plaintiff Southeastern Sureties Group, Inc. ("Southeastern") moves to enjoin International Fidelity Insurance Company ("International") from proceeding in a parallel lawsuit filed by International relating to the same subject matter in the U.S. District Court of the District of New Jersey, Civil Action No. 13-CV-6077 (the "NJ Action'[']), against Southeastern and its president, Thomas M. Apodaca ("Mr. Apodaca").
>
> The NJ Action and this lawsuit (the "NC Action") arise out of a forfeiture on an Appearance Bond for Pretrial Release filed September 17, 2008 for the defendant Elder G. Cortez ("Mr. Cortez") in the amount of $570,000 in File No. 07 CRS 56935 in Johnston County, North Carolina (the "Cortez Bond"). Prior to International's adding Southeastern as a party to the NJ Action, Southeastern filed this NC Action, seeking to establish that Southeastern has no liability relating to the Cortez Bond and alternatively to recover damages from International based upon its misconduct in connection with the bond.
>
> In the absence of injunctive relief, International's prosecution of the NJ Action will interfere unduly and inequitably with the progress of this NC Action and with the establishment of Southeastern's rights properly justiciable in this Court. The NJ Action will also be unduly annoying, vexatious and harassing to Southeastern and Mr. Apodaca. Southeastern has no adequate remedy at law and will suffer irreparable damage in the event International is not enjoined from proceeding with the NJ Action.

On 10 February 2014, defendant Mr. Lowry filed a motion to dismiss plaintiff Southeastern's complaint.

On 3 March 2014, the trial court entered orders denying plaintiff Southeastern's motion to enjoin, denying defendant International's motion to dismiss, and granting defendant International's motion to stay. The order granting the motion to stay found:

1. This action was filed in Henderson County, North Carolina on November 1, 2013 contesting the validity of a bond executed on a criminal Defendant by the name of Cortez in 2008 in Johnston County, North Carolina (not Henderson County, North Carolina). The Plaintiff alleges that the Plaintiff was an agent of the Defendant International Fidelity Insurance Company (IFIC) but that Defendant Lowry was not authorized to attach IFIC's Power of Attorney to the bond issued in the Cortez criminal action. Other causes of action raised by the Plaintiff in this action against IFIC include Declaratory Judgment action, breach of duty, negligence and allegations that IFIC is estopped to deny invalidity of the bond. This Court specifically notes that all issues concerning the Defendant Cortez bond forfeiture in Johnston County, North Carolina have been resolved by the decision of the North Carolina Court of Appeals.

2. A suit was initiated in the United States District Court for the District of New Jersey captioned International Fidelity Insurance Company (hereinafter referred to as "IFIC"), Plaintiff vs. Thomas M. Apodaca (hereinafter referred to as "Apodaca") on October 11, 2013 in file #13-CV-6077 wherein IFIC was seeking indemnification from

Defendant Apodaca regarding losses with the bond issued in the Cortez criminal action. This federal suit was amended on November 21, 2013 by the Plaintiff IFIC by adding Southeastern Sureties Group, Inc. (hereinafter referred to as "Southeastern") as a party Defendant in the New Jersey action subsequent to the filing of this action in Henderson County.

3.  Plaintiff Southeastern Sureties Group, Inc. (Southeastern) is a North Carolina legal entity utilized by Apodaca in his bonding business. Exhibits from the Secretary of State of North Carolina and the North Carolina Department of Insurance indicate that Apodaca is the registered agent, President and sole officer of Southeastern. Bail bondsman statutes for the State of North Carolina require a natural person to write bail bonds.
    Documentation from the North Carolina Department of Insurance verifies that Apodaca is licensed to write bonds for the Defendant IFIC in the State of North Carolina. Plaintiff Southeastern Sureties Group, Inc. and Apodaca appear to this Court to be one entity in [(sic)] the same for matters pertaining to the criminal Cortez bond which the subject matter of this North Carolina and New Jersey causes of action.

4.  Apodaca has not been made a party Plaintiff to this cause of action 13 CVS 1778 in Henderson County. IFIC did not have a contractual relationship with Southeastern regarding surety bonds in North Carolina.

5.  The issues in the above captioned matter include the following:
    a.  Was the Defendant IFIC surety on the Cortez bond?
    b.  Did Defendant IFIC release Plaintiff

Southeastern Sureties Group, Inc., (Southeastern) from the bond?

c. Has Defendant IFIC waived any claim against the Plaintiff Southeastern?

6. Issues in the federal action in New Jersey are identical in that the Plaintiff IFIC in New Jersey is seeking indemnification from Apodaca for costs, fees, damages or fines incurred by Plaintiff IFIC in the criminal Cortez bond pursuant to a contract between Plaintiff IFIC and Apodaca which contains an indemnification agreement.

7. The Plaintiff IFIC and Defendant Apodaca selected their exclusive forum in 2004 pursuant to Paragraph 24 of the contract being sued upon in the New Jersey federal action by the following language:

APPLICABLE LAW: In event of dispute or litigation, exclusive jurisdiction and venue shall lie in the State of New Jersey. The parties hereby agree that any legal action brought to enforce any of the rights of the parties under this agreement or arising out of any disputes between them shall be brought only in the State or Federal courts of New Jersey.

8. This Court has considered factors designated under NCGS 1-75.12 including the nature of the case, the exclusive forum selected by the parties in 2004 (prior to the execution of the Cortez bond), the convenience of witnesses, applicable law, inappropriate choice of forum by the Plaintiff in 13 CVS 1778 and other practical considerations.

9. Plaintiff Southeastern argues substantive law from the State of New Jersey including matters such as the "Entire Controversy Doctrine"; the alleged fact that IFIC waived exclusive forum selection by filing suits in North Carolina regarding the Cortez criminal bond; and the inconsequential fact that IFIC moved its national headquarters from the

State of New Jersey to the State of California. The Court has considered these matters and finds that these substantive issues may be raised by the Plaintiff Southeastern and/or Apodaca in the New Jersey Federal District Court if they choose to do so; however they are inapplicable in this North Carolina cause of action.

The trial court then concluded:

1. This matter is properly before the Court and the Court has jurisdiction of the subject matter of this action.

2. The real parties in interest to this action by contract selected the State of New Jersey as the exclusive legal forum and venue for determination of all disputes arising between Apodaca and IFIC.

3. Apodaca and Plaintiff Southeastern Sureties Group, Inc. are one in [(sic)] the same entity for the purpose of this North Carolina cause of action.

4. The New Jersey federal suit was chronologically first filed for the indemnification issues created and/or caused by the Cortez criminal bond forfeiture in Johnston County, North Carolina.

5. Litigation of the matter in New Jersey involves the same matters in the above captioned action in the State of North Carolina and is parallel and duplicative in content.

6. It is in the best interests of the parties in this Henderson County, North Carolina cause of action to litigate issues raised in File #13-CV-6077 in the Federal District Court for the District of New Jersey prior to proceeding further in the case at bar.

The trial court then ordered:

1. That Defendant IFIC's Motion of December 23, 2013 to Stay Proceedings until the completion of the action filed in the United States District Court for the District of New Jersey in File # 13-CV-6077 be and is hereby GRANTED.

2. Further proceedings in this North Carolina matter shall be stayed pending conclusion of litigation and appeals in the United States District Court for the District of New Jersey File # 13-CV-6077.

Plaintiff Southeastern appeals the order granting defendant International's motion to stay.

E. The Federal New Jersey Case During This Appeal

During the pendency of this appeal, in September of 2015, the federal New Jersey Court proceeded with the case and heard motions for summary judgment, sanctions, and to dismiss. *See International Fidelity Insurance*, ___ F. Supp. 2d ___. The federal court addressed some of the same legal issues raised in the case before us. *See id.* The federal court granted the summary judgment motion in part and denied the motion for sanctions and to dismiss; therefore, the federal court will be proceeding to trial on the remaining claims. *See id.*

F. The North Carolina Appeal

On 14 September 2015, this Court received a "MEMORANDUM OF ADDITIONAL AUTHORITY" from defendant International which included the September 2015 federal New Jersey Court decision; while the decision is not

"additional authority" pursuant to North Carolina Rule of Appellate Procedure 28, it is relevant to this case. *See generally* N.C.R. App. P. 28. Nonetheless, defendant International presented us with the "memorandum" but made no argument regarding its effect on this case. Because of the unusual situation, this Court requested supplemental briefs addressing the effect, if any, of the federal ruling on this appeal. Defendant International's brief suggested this Court simply wait to see what happens in the federal case because it may moot the case before us. Of course, since we are considering an order staying the North Carolina action, simply waiting on the federal New Jersey Court would as a practical matter affirm the trial court's order granting the stay. No party has filed a motion to dismiss this appeal.

Plaintiff Southeastern's brief addressing the federal New Jersey opinion notes several ways in which the North Carolina order on appeal has adversely affected its case in New Jersey. Plaintiff Southeastern notes that the New Jersey opinion "took judicial notice of an erroneous finding and conclusion . . . which is critical" by determining "that Apodaca and Southeastern are one entity in the same for matters pertaining to the criminal Cortez Bond." (Quotation marks omitted.); this particular finding is one of the primary bases of plaintiff Southeastern's arguments in this appeal. Plaintiff Southeastern also argues that the federal New Jersey opinion "dispel[s] International's representation [in North Carolina] that International had paid the settlement of the Cortez Bond, when that was not the case." Plaintiff

Southeastern also reiterates its argument that the trial court applied the wrong standard of the "best interest of the parties" instead of the substantial justice standard which is required to grant a stay under North Carolina General Statute § 1-75.12. In light of the original briefs as well as the additional briefing of the parties on this unusual case, we will address the current appeal.

## II. Stay

This case seems to present many potential legal issues including necessary parties, real parties in interest, collateral estoppel, and judicial estoppel which could be determinative, but those issues were not raised. We have had substantial difficulty addressing the issues which were actually argued, considering the absence of crucial documents such as the 1987 Contract and the absence of argument on the federal court decision. But we are bound by the arguments before us, and we will not address potential arguments that are not before us on appeal. *See Viar v. North Carolina Dept. of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360 (2005) ("It is not the role of the appellate courts, however, to create an appeal for an appellant.") Although the argument section of plaintiff Southeastern's brief seeks to fragment the issue into 14 separate issues, the only real issue on appeal is whether the trial court abused its discretion by granting the stay.

> When evaluating the propriety of a trial court's stay order the appropriate standard of review is abuse of discretion. A trial court may be reversed for abuse of discretion only if the trial court made a patently arbitrary decision,

manifestly unsupported by reason. Rather, appellate review is limited to [e]nsuring that the decision could, in light of the factual context in which it was made, be the product of reason.

*Home Indem. Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 113, 117–18, 493 S.E.2d 806, 809–10 (1997) (citations, quotation marks, and brackets omitted).

In determining whether to grant a stay under G.S. § 1-75.12, the trial court may consider the following factors: (1) the nature of the case, (2) the convenience of the witnesses, (3) the availability of compulsory process to produce witnesses, (4) the relative ease of access to sources of proof, (5) the applicable law, (6) the burden of litigating matters not of local concern, (7) the desirability of litigating matters of local concern in local courts, (8) convenience and access to another forum, (9) choice of forum by plaintiff, and (10) all other practical considerations.

*Lawyers Mut. Liab. Ins. Co. of N. Carolina v. Nexsen Pruet Jacobs & Pollard*, 112 N.C. App. 353, 356, 435 S.E.2d 571, 573 (1993).

Plaintiff Southeastern challenges several of the trial court's findings of fact and conclusions of law. The most significant portions of the order challenged in the current posture of the case are finding of fact 3 and conclusion of law 3, respectively: "Plaintiff Southeastern Sureties Group, Inc. and Apodaca appear to this Court to be one entity in [(sic)] the same for matters pertaining to the criminal Cortez bond[,]" and "Apodaca and Plaintiff Southeastern Sureties Group, Inc. are one in [(sic)] the same entity for the purpose of this North Carolina cause of action." Plaintiff Southeastern contends that "[t]he record does not support a finding of fact that

Southeastern and Mr. Apodaca operate as one and the same." Although the "one and the same" determination is labelled both as a finding of fact and a conclusion of law, it is actually a conclusion of law since it addresses a legal conclusion about the relationship between Mr. Apodaca and plaintiff Southeastern, which would have to be based upon facts about the business entity and the individual. *See, e.g., Statesville Stained Glass v. T. E. Lane Construction & Supply*, 110 N.C. App. 592, 597-98, 430 S.E.2d 437, 440-41 (1993) ("In the instant case, with certain exceptions not material to the disposition of this case, the court's findings regarding Lane's involvement in Lane Construction are supported by the evidence. Based on the evidence in the record, Lane was the chief executive officer, sole shareholder, and controller of Lane Construction. The evidence also supports the court's findings that plaintiff at all times dealt with Lane, and that Lane dissolved Lane Construction in July, 1989, at which time Lane Construction owed business debts. However, these findings, even though supported by the evidence, cannot provide the basis for the court's conclusion of law that Lane Construction had no will or existence separate and apart from Lane, or that the stock control as exercised by Lane justifies piercing the corporate veil of Lane Construction." (quotation marks and brackets omitted)).

Plaintiff is essentially contending that defendant International should not be allowed to reverse pierce the corporate veil and reach through the corporation of plaintiff Southeastern to reach the individual Mr. Apodaca. But no issue of piercing

the corporate veil was raised or argued before this Court and considering the entirety of the order in the context of this case, this determination appears to simply be a poorly-worded statement which recognizes the fact that plaintiff Southeastern is wholly owned and operated by Mr. Apodaca.[2]

But plaintiff is correct that this "one and the same" determination is not supported by the record to the extent that it could be read as a binding legal determination of the relationship between Mr. Apodaca and plaintiff Southeastern for purposes of this action or the federal New Jersey action. The only finding of fact which addresses Mr. Apodaca and plaintiff Southeastern's relationship is finding of fact. 3: "Plaintiff Southeastern Sureties Group, Inc. (Southeastern) is a North Carolina legal entity utilized by Apodaca in his bonding business. Exhibits from the Secretary of State of North Carolina and the North Carolina Department of Insurance indicate that Apodaca is the registered agent, President and sole officer of Southeastern." Finding of fact 3 cannot support a conclusion of law that Mr. Apodaca and plaintiff Southeastern are "the same entity for the purpose of this North Carolina cause of action." *See id.* Indeed, Mr. Apodaca is not even a party to this case, so the trial court would be unable to properly make a determination as to any potential individual liability. In addition, since no party has argued a theory of "reverse

---

[2] Again, we note that the 1987 Contract is not part of our record, but it initially formed the relationship between Mr. Apodaca and defendant International before the creation of plaintiff Southeastern.

piercing" of the corporate veil to impose individual liability upon Mr. Apodaca and no party has sought to make him a party to this case in North Carolina, the conclusion that Mr. Apodaca and Southeastern are "one and the same" was not necessary for the trial court's consideration of the motion to stay. Because we have concluded that the trial court could not properly determine that Mr. Apodaca and plaintiff Southeastern were "one and the same," to the extent that the federal New Jersey Court did rely upon that determination, such reliance is misplaced.

Aside from the propriety of the trial court's conclusion of law, we note that the order on appeal is a stay order, which is necessarily a preliminary determination based upon limited information. *See generally* N.C. Gen. Stat. § 1-75.12 (2013). A trial court's determination in a preliminary order of any important substantive factual or legal issue which may affect the outcome of a case should rarely, if ever, be solely relied upon to support a trial court's later substantive ruling on an issue. An order under North Carolina General Statute § 1-75.12 for a stay of proceedings is necessarily a preliminary order which is entered before the case has been developed by discovery.[3] *See generally id.* In fact, North Carolina General Statute § 1-75.12(b) recognizes that as a case develops, modification of a stay order may become necessary:

---

[3] An order granting a stay is comparable to a temporary injunction, so we find our Supreme Court's directive regarding the effect of a temporary injunction instructive: "The findings of fact and other proceedings of the judge who hears the application for an interlocutory injunction are not binding on the parties at the trial on the merits. Indeed, these findings and proceedings are not proper matters for the consideration of the court or jury in passing on the issues determinable at the final hearing." *Huskins v. Hospital*, 238 N.C. 357, 362, 78 S.E.2d 116, 120-21 (1953).

> (b) Subsequent Modification of Order to Stay Proceedings. - In a proceeding in which a stay has been ordered under this section, jurisdiction of the court continues for a period of five years from the entry of the last order affecting the stay; and the court may, on motion and notice to the parties, modify the stay order and take such action as the interests of justice require. When jurisdiction of the court terminates by reason of the lapse of five years following the entry of the last order affecting the stay, the clerk shall without notice enter an order dismissing the action.

N.C. Gen. Stat. § 1-75.12. We also realize that the New Jersey federal court may have considered information which was not before either the North Carolina trial court or this Court and that it may have reached the same conclusions even without any reliance upon the North Carolina stay order. But since the conclusion of law, as stated in both finding of fact 3 and conclusion of law 3, is not supported by the other findings of fact, it was made in error and both finding of fact 3 and conclusion of law 3 should be stricken from the stay order.

Plaintiff Southeastern also argues in its supplemental brief addressing the federal New Jersey opinion that it "dispel[s] International's representation [in North Carolina] that International had paid the settlement of the Cortez Bond, when that was not the case." But again, the evidence presented before the federal New Jersey court was not necessarily evidence that was before the trial court when considering whether or not to issue a stay, the trial court made no findings on this issue, and no argument was presented on this issue until the supplemental briefs to this Court filed

after the New Jersey order, so we cannot address this factual issue. As we have previously noted, plaintiff Southeastern is able to pursue a modification of the stay "as the interests of justice require."[4] N.C. Gen. Stat. § 1-75.12.

Plaintiff Southeastern also contends that the trial court used the wrong standard, in concluding that a stay is in the "best interests" of the parties and not that it would work "substantial injustice" for the case to be tried in North Carolina. But reading the entire order and its findings and conclusions in context, it is apparent that the trial court considered the relevant factors in *Lawyers Mut. Liab. Ins. Co. of N. Carolina*, 112 N.C. App. at 356, 435 S.E.2d at 573. The stay order does not have to use the "magic words" of "substantial injustice" where it is clear from the entire order that the trial court was in fact considering the appropriate factors and making the proper determination pursuant to North Carolina General Statute § 1-75.12. Use of the term "best interests" may be poor draftsmanship, but it does not rise to the level of reversible error.

Having addressed plaintiff Southeastern's major arguments on appeal, we turn back to the remainder of its argument. Plaintiff Southeastern challenges or at least mentions virtually every finding of fact and conclusion of law in the 14 headings in its arguments in its original brief. Most of the findings of fact are simply an

---

[4] This opinion should not be read as suggesting or commenting in any way on the propriety or merit of a motion to modify pursuant to North Carolina General Statute § 1-75.12(b); we merely note that the avenue is available for plaintiff Southeastern to pursue and modification of the stay is not the role of this Court. *See generally* N.C. Gen. Stat. § 1-75.12.

identification of the parties, the issues, and a recitation of the long procedural history of this case, and they are supported by the record. We note again that this is a stay order; it is a preliminary order which does not purport to make a final determination of any disputed fact or substantive legal issue. *See generally* N.C. Gen. Stat. § 1-75.12. The trial court's order made findings of fact regarding the relevant factors. *See Lawyers Mut. Liab. Ins. Co. of N. Carolina*, 112 N.C. App. at 356, 435 S.E.2d at 573. As noted above, the trial court's conclusion of law regarding the legal relationship between Mr. Apodaca and plaintiff Southeastern was not necessary for purposes of the stay order, so the order is proper even without that conclusion of law. Because the federal New Jersey action was filed first and all of the parties are currently litigating the ultimate issue in this case, which is who should be liable for the loss associated with the bond forfeiture, the trial court's issuance of a stay was not "a patently arbitrary decision, manifestly unsupported by reason." *See Home Indem. Co.*, 128 N.C. App. at 117–18, 493 S.E.2d at 809–10. Given the multiple parties and issues in dispute, the trial court's order essentially "recognizes the practical reality" that the New Jersey federal court "is better able to arrive at a more comprehensive resolution of the litigation, given the broader scope of claims and parties before it." *Wachovia Bank v. Harbinger Capital Partners Master Fund 1, Ltd.*, 201 N.C. App. 507, 521, 687 S.E.2d 487, 496 (2009). The federal court's well-reasoned opinion which has determined that it is the proper jurisdiction for litigating the

claims arising from the contractual relationships between the parties only serves to underscore the trial court's determination.

## III. Conclusion

We strike finding of fact 3 and conclusion of law 3 from the stay order, but because the trial court did not abuse its discretion in granting the stay, we affirm.

AFFIRMED.

Judge BRYANT concurs in the result in separate opinion.

Judge HUNTER, Jr. concurs in part and dissents in part.

No. COA14-815 – *Se. Surs. Grp., Inc. v. Int'l Fid. Ins. Co.*

BRYANT, Judge, concurring in the result.

I write separately to note that while I concur in the result of the majority opinion, and concur in most of the analysis, I would affirm the trial court order without striking its finding of fact 3 and conclusion of law 3.

As the majority noted, this Court reviews a lower court's order granting a stay for abuse of discretion. *See Lawyers Mut. Liab. Ins. Co. v. Nexsen Pruet Jacobs & Pollard*, 112 N.C. App. 353, 356, 435 S.E.2d 571, 573 (1993). A trial court is deemed to have abused its discretion when its decision is patently arbitrary or manifestly unsupported by reason. *Muter v. Muter*, 203 N.C. App. 129, 134, 289 S.E.2d 924, 928 (2010) (citation omitted). While the majority opinion upholds the trial court's order in general as one that is not arbitrary, and therefore does not constitute an abuse of discretion, by striking finding of fact 3 and conclusion of law 3, the majority appears to determine the trial court did abuse its discretion as to that finding and conclusion.

With regard to the trial court's conclusion of law 3, that Apodaca and Southeastern are the same entity, Southeastern contends that this conclusion is in error because it is not supported by the evidence. The majority opinion as well as a portion of the dissenting opinion appears to agree with that contention. However, a review of the record and the previous incarnations of this case before this Court indicate that Apodaca was, at the time of the Cortez bonds, the sole owner and controller of Southeastern Sureties. Moreover, International Fidelity presented evidence that Apodaca signed various documents on behalf of Southeastern,

acknowledged his liability for the actions of Southeastern, and conducted his bail bond/surety business in North Carolina through Southeastern. Based on our standard of review, I cannot agree that the trial court abused its discretion where there was sufficient evidence for the trial court to conclude that Apodaca and Southeastern Sureties are "one and the same entity" for purposes of granting International's motion to stay.

Other than as stated above, I concur in the majority opinion.

No. COA 14-815 – Southeastern Sur. Grp., Inc. v. Int'l Fid. Ins. Co.

HUNTER, JR., Robert N., Judge, concurring in part, and dissenting in part.

I agree with the majority that this case is a bramble bush. *See* KARL N. LLEWELLYN, THE BRAMBLE BUSH: THE CLASSIC LECTURES ON THE LAW AND LAW SCHOOL. I dissent with the majority opinion only on the remedy which is required in this matter. I also agree that North Carolina courts have subject matter jurisdiction over the controversy based upon the record in this case and the prior pending actions described in *Cortez I*, *Cortez II*, and *Cortez III* and my understanding that bond issues and their collateral consequences are *in rem* or *quasi in rem* matters under North Carolina law requiring resolution by state courts. N.C. Gen. Stat. § 1-75.8 (2013). I am not convinced that under existing federal case law that in this limited area state courts defer to federal courts. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927 (1983); *see also* 17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4241 (3d ed. 1998). However, I am not sure how this matter is adjudicated given that the federal court has been adjudicating the rights of the parties while this appeal is pending.

Based upon these findings, the court made the legal conclusion that Thomas Apodaca was the real party in interest in the litigation in Henderson County. I agree with the majority. This legal conclusion was made without competent evidence to support it. While I agree that this evidence would show that Apodaca and Southeastern may be in privity with one another, I am not convinced that the corporate entity can be set aside so lightly merely based on ownership and control of a corporation.

*Hunter, Jr., Concurring in part, and dissenting in part*

N.C. Gen. Stat. § 1-57 and Rule 17(a) of the Rules of Civil Procedure require that every claim be prosecuted in the name of the real party in interest. Should it appear to a court that a claim is not being prosecuted in the name of the real party in interest, then the procedure for the court to follow is to continue the matter to give the real party in interest an opportunity to plead or ratify the pleadings. "Where . . . a fatal defect of the parties is disclosed, the court should refuse to deal with the merits of the case until the absent parties are brought into the action, and in the absence of a proper motion by a competent person, the defect should be corrected by *ex mero motu* ruling of the court." *Booker v. Everhart*, 294 N.C. 146, 158, 240 S.E.2d 360, 367 (1978); *see Carolina First Nat'l Bank v. Douglas Gallery of Homes, Ltd*., 68 N.C. App. 246, 314 S.E.2d 801 (1984).

It does not appear from the record that Apodaca was given this opportunity. International's Motion to Dismiss filed on 5 February 2014 first suggests Apodaca should have been a party. During the hearing on the motion to dismiss, International stated, "Apodaca and International are the parties at interest here." From then, it was less than a month until the court entered its order granting a stay. It does not appear from the record that Apodaca has ever been served in this case. The court has found and concluded that Apodaca is not a party plaintiff. The record does not contain a motion to dismiss for failure to prosecute the claim in the name of the real party in

*Hunter, Jr., Concurring in part, and dissenting in part*

interest.  No party filed a third party complaint or motion to join Apodaca.  I agree that the court can raise the issue on its own, but once raised it would be an error to enter a stay order until the real party in interest issue was resolved procedurally.  I would hold the court should not have stayed the proceedings in this case until Apodaca intervenes, is joined, ratifies the complaint, or is given the opportunity to plead his case.  Only then may the court take action *ex mero motu* to make him a party.  Should the court do so it must recite findings of fact upon which such action should be taken.